SOMMERVILLE, J.
Plaintiff, the BrooksScanlon Company, alleges itself to be engaged in the logging and sawmill business, and in such business as may be incidental thereto, and asks that order No. 2228 of the Railroad Commission of Louisiana be declared unjust, unreasonable, null, void, and of no effect, and that the same be canceled and set aside.
Order No. 2228 is in part as follows:
“That the Brooks-Scanlon Company, either directly or through arrangements made with the Kentwood & Eastern Railway Company, shall operate its narrow gauge line of railroad between Kentwood, Louisiana, and Hackley, Louisiana, by running 'mixed passenger and freight trains thereon upon such convenient schedules and upon such days as may be approved by the commission. The said BrooksScanlon Company or its lessee, to prepare and submit to the commission for its approval without delay, a time table showing the schedules upon which it is proposed to operate such trains,” etc.
The Railroad Commission answered, and, reconvening, asked that an injunction issue enjoining and prohibiting the Brooks-Scanlon Company from taking up, removing, or abandoning any or part of the narrow-gauge rail *1089 road, track known as the Kentwood & Eastern Railway; and that order No. 2228 of the commission be declared legal, valid and binding against the plaintiff.
The injunction was dissolved on bond; and the commission asked that the order dissolving the injunction be set aside; and it was denied. There was trial on the merits; and judgment was rendered in favor of plaintiff. The commission has taken appeals from the judgments dismissing the rule of defendant to set aside the order dissolving the writ of injunction, and from the judgment in favor of the plaintiff declaring order No. 2228 to be null and void.
[1] It is settled that the commission may prevent the removal or abandonment of a railroad which is in use and in which the public has an interest. R. R. Comm. v. Kansas City R. R., 111 La. 133, 35 South. 487; Gates v. Boston & N. Y. R. R., 53 Conn. 333, 342, 5 Atl. 695.
The question in this case is whether plaintiff owns and has operated a railroad as a common carrier or not; and whether it may discontinue to operate against the orders of the State Railroad Commission.
The Brooks-Scanlon Company is a Minnesota corporation, organized February 17, 1906, with Joseph Scanlon, Dwight F. Brooks, Anson S. Brooks, John Shull, and Philip R. Brooks as incorporators. The company acquired all of the property, business, and appurtenances of the Brooks-Scanlon Lumber Company, another Minnesota corporation, and succeeded it in business. The Kentwood & Eastern Railway was among the property transferred by the Brooks-Scanlon Lumber Company to the Brooks-Scanlon Company. It, the railroad, was a going concern, a carrier, engaged in transporting passengers and freight, express and the mails. All of its privileges were exercised under the authority and protection of the Interstate Commerce Commission and the Railroad Commission of Louisiana; and all of these privileges had been continued to be exercised until about the time of filing this suit.
The Brooks-Scanlon Lumber Company was organized in Minnesota, January 14, 1901, with Lester R. Brooks, M. Joseph Scanlon, Henry F. Gipson, Anson S. Brooks, Edson L. Harkness, Dwight F. Brooks, and Harry K. Brooks as incorporators. This corporation appears to be in business in the state of Minnesota, for on April 28, 1910, the charter of the company was amended so as to increase the capital stock to $3,000,000. The incorporators of the two companies were about the same persons. The Brooks-Scanlon Lumber Company acquired the property and belongings of the Banner Lumber Company, a Louisiana corporation, including the railroad, which was then being operated by it as a common carrier, in the year 1905. And the Brooks-Scanlon Lumber Company operated the road as a common carrier for a short time in 1905.
It appears that the Brooks-Scanlon Lumber Company, or the Brooks-Scanlon Company, or rather their incorporators, after acquiring the Kentwood & Eastern Railroad, caused the Kentwood & Eastern Railway Company to be organized, and it became the lessee of the roadbed, including the ties and rails of the railroad, and the purchaser of the rolling stock of the road. The BrooksScanlon Company assumed the position of lessor, and the Kentwood & Eastern Railway Company became the lessee of the railroad on July 1, 1906. Since that time the road has been operated as a common carrier in the name of the Kentwood & Eastern Railway Company.
In a damage suit against the Kentwood & Eastern Railway Company on behalf of an employs of the Brooks-Scanlon Company it was said:
“Defendant and Brooks-Scanlon Company are under the same control, and are what may be called ‘interlocking corporations’; that is to *1091 say, a majority of the stock in each is owned by the same parties; the offices of the two companies are in the same building; the lumber mills of Brooks-Seanlon Company are in or adjacent to defendant’s ‘railroad yards.’ The raw materials used in and the manufactured product of the mills are handled by defendant. Defendant’s employés, a considerable proportion of them, are carried on the Brooks-Scanlon’s pay rolls, and altogether it is not clear where the separate interest of the one corporation begins and that of the other ends. * * * In any event, it is reasonable to suppose that, the owners of the majority of the stock of each company being the same, the policy adopted and acted on by each company was controlled by and in the interest of the same persons.” Lea and Wife v. Kentwood & Eastern Railway Co., 131 La. 882, 60 South. 370.
“A corporation cannot, as a general rule, relieve itself of this liability [for negligence] by a lease or transfer of its property.” 7 R. C. L. 689.
The Kentwood & Eastern Railroad Company, a Louisiana corporation, was organized December 5, 1905, with a capital stock of $100,000, and the incorporators were Dwight E. Brooks, Anson S. Brooks, Philip R. Brooks, and M. J. Scanlon, all of Minnesota, who were the holders of $99,400 of the stock. There were six shares of stock of $100 each, distributed among six Louisianians. The four persons just named were four of the five individual incorporators of the BrooksSeanlon Company. The two companies and the Brooks-Seanlon Lumber Company were, to all intents and purposes, the same corporation.
“Corporations are intellectual beings, different and distinct from all the persons who compose them.” C. C. art. 435.
The law here announces a principle which until translated into practice is rather abstract. When five persons organize themselves into a corporation, or intellectual being, and cause that organization to be acknowledged before two law officers, and call the organization by two or three different names, the intellectual beings are really one and the same. A corporation is technically the owner of the corporate property, but the shareholders are the owners of the corporation. Stockholders, acting unanimously, do what they please with what belongs to them. Cox v. Von Ahlefeldt, 105 La. 543, 588, 30 South. 175; Dilzell v. Lehmann, 120 La. 273, 283, 45 South. 138.
“The doctrine, however, that a corporation is a legal entity existing separate and apart from the persons composing it is a mere fiction, introduced for purposes of convenience arid to subserve the ends of justice. This fiction cannot be urged to an extent and purpose not within its reason and policy, and it has been held that in an appropriate case, and in furtherance of the ends of justice, a corporation and the individual or individuals owning all its stock and assets will be treated as identical. * * * Where it [the corporation] is proceeding in equity to assert rights of an equitable nature or is seeking relief on rules or principles of equity, a court of equity will not forget that the stockholders are the real and substantial beneficiaries of a recovery, and if the stockholders have no standing in equity, and are not equitably entitled to the remedy sought to be enforced by the corporation in their behalf, the corporation will not be permitted to recover. Again, corporate existence as an entity distinct from its members may be ignored in order to circumvent the fraudulent purpose of the shareholders in its organization.” 7 R. O. L. p. 27.
The testimony of the manager of the Kent-wood & Eastern Railway Company, taken before the Interstate Commerce Commission December 13 to 15, 1910, which testimony is in this record, shows “that the Kentwood & Eastern Railway Company is controlled through the ownership of stock by the stockholders of the Brooks-Seanlon Company;” that the stockholders of the two companies are substantially identical; that the railroad company had been financed by the BrooksSeanlon Company; that the same interests control the two companies; that the railroad company owes the Brooks-Seanlon Company $220,000; that the railroad company pays no dividends; that the president, vice *1093 president, and secretary and treasurer are officers in both companies; that the salary of the president and vice president is $7,500 each; the secretary’s salary is $5,000; that this $20,000 is divided between the BrooksScanlon Company and the railway company in the proportion of the capital stock, or practically so; that is, abont 1 to 15; in other words the railroad company pays about $1,200 a year; that that is the proportion of the salaries paid those officers; the railroad company allows the Brooks-Scanlon Company to use its tracks to reach their logging spurs without charge; that the railroad company runs passenger trains daily between Hackley and Kentwood in Louisiana, two mixed trains daily each way, which do a commercial business; that local freight trains are run each day; that the company carries the United States mail and express; that it participates in joint through-class rates with the Illinois Central Railroad; that the two corn* panies, plaintiff and the Kentwood & Eastern Railway Company, are in the same building; that the railroad was exempt from taxation during several years.
This same witness also testified that the railroad was operated as a common carrier. The witness further testified that a third rail had been put down for a part of the way, and to that extent the road was a standard gauge road; but the standard gauge road is not involved in this case.
[2] Plaintiffis admittedly a corporation engaged in business in the state of Louisiana, and as such it is amenable to the laws of the state. It is the owner of a railroad bed, including cross-ties and rails, which it acquired with its sawmill and lumber business, which road had been operated by two of its predecessors in the same business; it entered into a contract. of lease with the Kentwood & Eastern Railway Company, and assumed the r61e of lessor. The lessee was a subordinate or. affiliated corporation, or an interlocking corporation, with the plaintiff; the incorporators of the one being the stockholders of the other. We do not think that the contract of lease operated a discharge of plaintiff from continuing the services of a common carrier on its railroad.
[3] But, says the plaintiff, I am not authorized by my charter to engage in the railroad business, and I cannot be compelled to engage in it. The answer is that plaintiff is the owner of a railroad, that it operated it as a common carrier, and that it has continued to operate it as a common carrier, through the name of another; and the court is not called upon, in this case, to say whether plaintiff is lawfully operating a railroad, or that it is violating its charter in doing so. That is a matter which rests with the Attorney General, and the courts are without jurisdiction over that matter until it shall be regularly presented in a proper suit.
The Revised Statutes, as amended by Act 154, 1902, p. 288, authorize the forming of corporations for the following purposes:
“For the construction, working and maintenance of railroads, canals, plank roads, bridges, ferries, transportation by pipe lines, or other works of public improvement, whether within or without the limits of the state; * * * for the manufacture and transportation of lumber of all kinds. * * * No such corporation shall engage in mercantile, or commission, brokerage, stock jobbing, exchange or banking business of any kind.”
[4] The act appears to permit the combination of railroading and the manufacture and transportation of lumber of all kinds in one charter in the state of Louisiana. The law is presumed to be the same in Minnesota.
And it may well be considered that plaintiff’s charter gave it the right to combine the two businesses in that section which reads in part:
“The general nature of its business shall be to manufacture, buy, sell and deal in timber, logs, lumber, building materials and other personal *1095 property; * * * to buy, sell, hypothecate, own and bold stock in other corporations; also to buy, own, lease, mortgage, sell, deal in and improve any real estate wherever situated, and to carry on any other lawful business necessary or proper for the accomplishment of the purposes of the corporation.”
A railroad is a very necessary appliance in carrying on the business of a large timber plant; which was one of the purposes of the plaintiff corporation. And it is evident that plaintiff so construed its charter rights when it bought the railroad and the sawmill business from its predecessor in business.
[5] But, plaintiff insists that it is not a railroad company, that it has not operated a railroad, and that, under its charter, it cannot be made to operate one; that it has canceled the lease it made to the Kentwood Railway Company; and that it would be the taking of its property without due process of law to force it to operate the Kentwood & Eastern Railroad at an expense in excess of the revenues heretofore derived therefrom.
These claims have all been met by defendant showing that plaintiff purchased the Kentwood & Eastern Railway; that it and the Brooks-Scanlon Lumber Company operated it as a common carrier in connection with their private business until it was rented to the Kentwood & Eastern Railway Company, through whom plaintiff continued to operate it as its lessees; that the Kentwood & Eastern Railway Company is a subidiary corporation to plaintiffs; that the two companies have privity of interests; that they are interlocking or affiliated corporations; that they are owned by the same persons, the incorporators of the one being the stockholders of the other; and that the two corporations are one and the same under different names, or that the Brooks-Scanlon Company owns the stock, together with the franchises and all the belongings of the railway company.
[6] The only question left for determination is whether plaintiff can be compelled by the Railroad Commission to operate its railroad and thus discharge its assumed obligations to the public when it is alleged that the operation thereof would entail a loss upon it.
The testimony found in the record shows a necessity for the continuance of the operation of the railroad for transportation of passengers, freight, mail, and express matter.
Plaintiff offered testimony only as to the earnings of the railroad, of one branch or department of its business. This showed a loss. But the test of whether plaintiff’s property would be taken without compensation by compelling it to perform an assumed public duty is the net results from the whole enterprise. The evidence should show net results from the entire business of the corporation, and not the results of only a branch or department of that business. One branch of a business might always be operated at a loss, while the entire business would be profitable.
Again, the order of tne commission orders plaintiff to submit a new schedule for transportation which may be operated at much less expense to it than the former schedule cost, and at a profit for plaintiff.
[7] Plaintiffhas not petitioned the Railroad Commission to permit it to discontinue its business of railroading; and, until it has done so, and the commission has acted, the courts are without jurisdiction of the matter. State ex rel. Tate v. Brooks-Scanlon Co. et al., 143 La. 539, 78 South. 847. The Kent-wood & Eastern Railway Company has made such request; but it is not nominally a party to this suit.
It is therefore ordered, adjudged, and decreed that the judgments appealed from be annulled, avoided, and reversed; that the injunction sued out by defendant in reconvention be reinstated; and that this suit be dismissed, at plaintiff’s cost.
O’NIELL and PROVOSTY, JJ., dissent.