O'NIELL, C. J., dissents because of the ruling in State v̇. Itzkovitch, 49 La. Ann. 366, 21 So. 544, 37 L. R. A. 673, 62 Am. St. Rep. 648.

(120 So. 50)

No. 29559.

GRIFFON v. VILLIA.

Jan. 2, 1929.

Rehearing Denied Jan. 28, 1929.

Borron & Hebert, of Plaquemine, for appellant.

Benton & Benton, of Baton Rouge, for appellee.

O'NIELL, C. J. The plaintiff has appealed from a judgment dismissing a rule to show cause why an injunction should not issue to prevent the defendant's operating a motor vehicle for hire on the public highway between Plaquemine and Grand River, in competition with the plaintiff's business, without having given the bond or taken out the accident insurance required by the Act 292 of 1926, p. 532, and without having obtained a certificate from the Public Service Commission to operate a "motor carrier." The plaintiff alleges that he has complied with the statute, has obtained the required certificate from the Public Service Commission, and is operating a "motor carrier" over the described route, and that the defendant is competing with him unlawfully, by carrying passengers for hire, over the same route. Plaintiff avers that, as the business which the defendant is carrying on is that of a common carrier of passengers for hire, on the public highway, between fixed termini, his business is that of a "motor carrier," as defined in the statute, and is not permitted to be conducted without compliance with the statute.

The defendant, in response to the rule to show cause why an injunction should not issue, pleaded that the Public Service Commission alone had original jurisdiction over the complaint, that the district court in Iberville

parish had not jurisdiction, that the plaintiff had no cause or right of action, and that he had already brought his complaint before the Public Service Commission twice—the first complaint having been dismissed by the commission and the second being yet pending—and, in answer to the rule, the defendant denied that he was carrying on the business of a "motor carrier," as defined by the Act 292 of 1926, and averred that he was merely operating his automobile as a taxicab, going from Plaquemine to outside points only in response to special calls, or in fulfillment of certain contracts.

The plea to the jurisdiction of the court was, by mutual consent, not taken up separately, but was submitted with the case on its merits. The district judge was of the opinion that the plea to the jurisdiction of the court was well founded, but he overruled the plea in deference to the ruling of this court in the case of Motor Transit Co. v. Richardson, Lischman, and Schuler, No. 28915 (not reported), where this court refused to issue a writ of prohibition to forbid the district court to entertain jurisdiction in a. similar case. On the merits of this case, the court found that the defendant was merely operating a jitney or taxicab service, besides transporting laborers and school children under contracts, and was not operating on a regular schedule, or between fixed termini, or over a regular route, and was therefore not operating a "motor carrier," as defined in the Act 292 of 1926, and was not obliged to obtain a certificate from the Public Service Commission, or to give the bond or take out the accident insurance, required of "motor carriers." The district judge therefore dismissed the rule to show cause why an injunction should not issue.

■ In the case of Motor Transit Co. v. Richardson, Lischman, and Schuler, No. 28915, where this court refused to issue a writ of certiorari or prohibition to forbid a dis-

trict judge to entertain jurisdiction in a case like this, the petition for the writs was considered by only a scant majority of the members of the court, in vacation, and the refusal to issue the writs was founded, in some measure, upon the idea that the relators had a remedy by appeal. The present case has come to us by appeal. The district judge's deference to this court's ruling in the case cited is commendable; but we shall consider the question of jurisdiction as being not foreclosed by our ruling in the case cited, because a refusal of this court to exercise its supervisory jurisdiction in a case where the complainant has yet a remedy by appeal does not establish jurisprudence.

■ We have concluded that the district judge is correct in his opinion that the Public Service Commission alone has original jurisdiction to determine whether the defendant should be compelled to take out accident insurance, furnish a bond, and obtain the certificate which is required of "motor carriers," by the Act 292 of 1926. The plaintiff alleges that the business which the defendant is conducting is that of a "motor carrier," as defined by the statute. That allegation is the only basis for this suit, because, if the defendant's business is not that of a "motor carrier," as defined by the statute, he cannot be compelled to take out the accident insurance, give the bond, or obtain the certificate which the statute requires of "motor carriers," as defined therein. The second section of the statute declares all "motor carriers," as defined in the statute, to be public carriers, and places them under the regulation and control of the Public Service Commission, thus:

"Every motor carrier, as herein defined, is hereby declared a public utility, and every person, association or corporation owning or operating a motor carrier, as herein defined, is hereby declared a common carrier, and made subject as such to the jurisdiction of

the Louisiana Public Service Commission, and, while so operating, it shall be subject to such rules and regulations as said Commission may prescribe with respect to rates, routes, fares, schedules, continuity of service, and the convenience and safety of passengers and freight and the public."

The seventh section of the statute also provides:

"The Louisiana Public Service Commission is hereby authorized to make such other rules and regulations and to hold such hearings and to issue such certificates as may be required to fully carry out the purposes of this Act."

The authority of the Legislature to declare "motor carriers," operating on the public highways, public utilities, and to place them under the control of the Public Service Commission, was conferred by a provision in section 4 of article 6 of the Constitution, viz:

"The Commission shall have and exercise all necessary power and authority to supervise, govern, regulate and control all common carrier railroads, street railroads, interurban railroads, steamboats and other water craft, * * * and other public utilities in the State of Louisiana. * * *

"The power, authority, and duties of the Commission shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by the common carriers and public utilities hereby, or which may hereafter be made subject to supervision, regulation and control by the Commission. The right of the Legislature to place other public utilities under the control of and confer other powers upon the Louisiana Public Service Commission respecting common carriers and public utilities is hereby declared to be unlimited by any provision of this Constitution.

"The said Commission shall have power to adopt and enforce such reasonable rules, regulations, and modes of procedure as it may deem proper for the discharge of its duties,

and it may summon and compel the attendance of witnesses, swear witnesses, compel the production of books and papers, take testimony under commission, and punish for contempt as fully as is provided by law for the district courts."

The second paragraph of the fifth section of article 6 of the Constitution provides for the enforcement of the orders of the Public Service Commission, and for appeals from its orders to the courts, thus:

"The orders of the Commission shall be enforced by the imposition of penalties as hereinafter provided, and any party in interest may appeal from orders and decrees of the Commission to the courts by filing suit, within ninety days from the date of the Commission's order, and not thereafter, against the Commission at its domicile. All cases contesting orders of the Commission, both in the trial and appellate courts, shall be tried summarily and by preference over all cases, and may be tried either in chambers, or at term time. Appeals from decisions of the trial court shall be direct to the Supreme Court, and shall be returned within ten days after the granting of the appeal. When the Commission appeals no bond shall be required."

In State ex rel. Tate et al. v. Brooks-Scanlon Co. et al., 143 La. 539, 78 So. 847, it was held that the Public Service Commission—then called the Railroad Commission—had exclusive original jurisdiction over proceedings against the public utilities, to compel them to perform a duty to the public; and the ruling was affirmed in Brooks-Scanlon Co. v. Railroad Commission of Louisiana, 144 La. 1086, 81 So. 727. It cannot be doubted that, if this proceeding were against a railroad company or any other of the public utilities mentioned in the fourth section of article 6 of the Constitution, it would have to be brought originally before the Public Service Commission, and an appeal from the commission's ruling in the matter could be had only by the filing of a suit against the commission,

in the district court in East Baton Rouge parish—at the domicile of the commission. The same method of procedure is applicable to suits against other public utilities, which have been declared such and placed under the supervision, regulation, and control of the commission since the adoption of the Constitution, pursuant to the authority conferred upon the Legislature by the provisions of the second paragraph of the fourth section of article 6 of the Constitution.

The judgment appealed from is affirmed on the ground that the district court had not jurisdiction to issue a writ of injunction.