MOBLEY, superintendent, *v.* MARLIN *et al.; et vice versa.*

1. To constitute a valid sale there must be a transfer of the beneficial interest in the property intended to be sold from the vendor to the vendee. The beneficial interest in the assets of an insolvent bank which has been placed in the hands of the State superintendent of banks under the provisions of the banking act of 1919 (Acts 1919, p. 135) is in the depositors and other creditors of the insolvent bank, and a purported sale of such assets by the superintendent of banks (who is in effect a statutory receiver holding the assets of the bank in trust for the creditors and depositors) to trustees seeking to execute the same trust for the holders of the beneficial interest merely effects a change of trustees without any change in the cestuis que trustent; and for that reason the change does not result in divesting the beneficial interest in the assets, or effectuate a sale within the meaning of that term as employed in section 7 of article 7 of the original banking act of 1919 (Acts 1919, p. 135), or as used in section 7a of the amendment of the banking act of 1922 (Acts 1922, pp. 63, 65). Consequently the judge of the superior court did not err in holding in this case that the so-called contract of sale which had previously been approved in vacation was void.

2. A sale of assets of an insolvent bank in the hands of the superintendent of banks may be approved in vacation by the judge of the superior court, who in the performance of that duty is merely the person selected and designated by law for that purpose, and the performance of that duty is merely quasi-judicial. Consequently it is within the power of the presiding judge of the superior court in term time, upon review of a petition brought within three years for the purpose of obtaining a decree that such sale was void, and when all parties to the sale are before the court, the superintendent of banks having consented to the jurisdiction and asked to be made a party, to annul and revoke the

previous approval of a contract·of sale of such nature as that just heretofore set forth.

3. A purported contract of sale between the superintendent of banks as vendor, to certain named persons alleged to be trustees for 80 per cent. of the creditors and depositors of an insolvent bank as vendees, which devolves upon the vendees all of the duties imposed by law upon the superintendent of banks in the liquidation of its affairs, including the possession of the assets, the collection of its choses in action, the sale of its property, or any other means such trustees may see fit to employ in the liquidation, including the payment of its debts, is beyond the scope of the duties or powers of the superintendent of banks and not authorized under the provisions of the banking act of 1919, or the amendment thereto of 1922. Such a contract does not come within the provision for the appointment of a liquidating agent, because the liquidating agent mentioned in the statute is an agent of the superintendent of banks, and by the appointment of a liquidating agent no title is supposed to be passed from the superintendent of banks to a vendee. Furthermore, the powers conferred upon the superintendent of banks in section 7 of article 7 of the banking law of 1919, declaring that "the superintendent shall collect all debts due and claims belonging to such bank, and by making application to the superior court of the county in which such bank is located, or to the judge thereof if.said superior court be not then in session, may procure an order to sell, compromise, or compound any bad or doubtful debt or claim, and on like order the superintendent may sell the real and personal property of such bank on such terms as the court, or the judge thereof, shall direct," are not only wholly incompatible with the concept of a sale as represented by the contract in this case, but the duties proposed to be delegated to the alleged vendees in this case are non-delegable by the superintendent of banks to any person not expressly named as a liquidating agent. The conference of powers upon the superintendent of banks in section 7a of article 7 of the banking act as amended, to institute, prosecute, and defend any and all actions, suits, and legal proceedings, etc., in the name of the bank, is a matter of express legislation within'the power of the General Assembly, must be strictly construed according to its terms, and can not be construed to convey similar powers either to a transferee or agent of the superintendent of banks; and the same holding applies to other powers conferred by section 7a of article 7, supra.

(a) Since, under the express provisions of section 20 of article 7 of the banking act of 1919, the superintendent of banks is to enforce executions issued to secure the collection of unpaid assessments upon the stockholders, and it is provided in section 7 of article 18 of that act that "the individual liability of stockholders . . shall . . be enforced only by and through the superintendent of banks," these assessments are not within the class of subjects referred to in section 7, article 7, which may be sold under the order of the judge of the superior court, for the reason that the superintendent of banks can not delegate to the would-be purchaser the right to use his name or the name of the insolvent bank in enforcing their collection.

(*b*) "The general rule is that an agent in whom is reposed trust or confidence, or who is required to exercise discretion or judgment, may not intrust the performance of his duties to another without the consent of his principal [the General Assembly]; and since nearly all acts of agency involve discretion, and the very selection as agent ordinarily implies personal confidence in the agent chosen, it follows that one clothed with authority to act for a principal must ordinarily perform the act himself." 31 Cyc. 1425. "Having exercised his discretion and determined upon the propriety of an act, an agent may delegate to a subagent the execution of merely mechanical, clerical, or ministerial acts involving no judgment or discretion." 31 Cyc. 1428, citing *McCroskey* v. *Hamilton*, 108 *Ga.* 640 (34 S. E. 111, 75 Am. St. R. 79). "In those cases in which the proper exercise of the office requires on the part of the officer the exercise of judgment or discretion, the presumption is that he was chosen because he was deemed fit and competent to exercise that judgment and discretion; and unless power to substitute another in his place has been given to him, he can not delegate his duties to another." *Horton* v. *State*, 112 *Ga.* 27, 28 (37 S. E. 100), quoting Mechem on Public Officers, § 567.

4. Under the principles announced in the preceding headnotes, the so-called sale amounted merely to a delegation to the trustees of the statutory duty of the superintendent of banks to collect what was owing to the bank and disburse the same, and the superintendent of banks was without authority, with or without the court's approval, to make such transfer. Under the principle announced in Jackson *v.* McIntosh, 12 F. (2d) 676, the superior court did not err in holding that the provisions of section 7 of article 7 do not authorize any disposition of the real and personal property of an insolvent bank in the hands of the superintendent of banks, which is not a sale by reason of the change in the beneficial ownership of the thing dealt with, but merely an agreement by which the powers and duties of the State superintendent of banks, which involve the exercise of both discretion and judgment, are devolved upon and delegated to persons denominated as trustees for the same persons for whom the superintendent of banks was himself already a fiduciary trustee as a quasi-receiver.

5. The court, having properly held that the order of the judge of the superior court approving the so-called sale was void, did not err in ordering that the assets of the bank be retaken in charge by the superintendent of banks for the purpose of liquidation according to law.

Nos. 6269, 6291. AUGUST 21, 1928. REHEARING DENIED SEPTEMBER 26, 1928.

Equitable petition. Before Judge W. E. Thomas. Colquitt superior court. September 5, 1927.

L. S. Marlin and others filed a petition against R. A. Cooper, J. B. Shepard, W. M. Smith, A. E. Stone, and L. S. Marlin, as trustees for the depositors and creditors of the Bank of Doerun, the Bank of Doerun, G. W. McWhite, and other directors of said bank, to set aside an alleged sale of the assets of that bank, which had been placed in the hands of the superintendent of banks; in which

suit it was prayed that a receiver be appointed for the purpose of collecting the debts due the bank and selling its real estate and personal property, and that such other rights and remedies be granted to petitioners as in equity are just. Upon this petition the judge issued a rule nisi calling upon the superintendent of banks to show cause why the prayers of the petition should not be granted. In response to the rule nisi the superintendent of banks consented to the jurisdiction of the court, and produced a previous order of the judge of the superior court authorizing the sale, as well as the contract alleged to have been entered into in pursuance of such order, by which the superintendent of banks assigned to Cooper, Shepard, Smith, Stone, and Marlin, as trustees for the creditors and depositors of the bank, certain specified assets including the cash on hand and the 100 per cent. assessment upon the stockholders provided for in the banking act of 1919. The contract is as follows:

"Georgia, Colquitt County. This indenture, made and entered into this the 19 day of January, 1927, by and between A. B. Mobley, as Superintendent of Banks for the State of Georgia, in his official capacity in charge of the business, assets, and affairs of the Bank of Doerun, a banking corporation having its office in Colquitt County, Georgia, party of the first part, and R. A. Cooper, J. B. Shepard, W. M. Smith, A. F. Stone, and L. S. Marlin, all of Doerun, Colquitt County, Georgia, as trustees for the creditors and depositors of the said Bank of Doerun, parties of the second part, witnesseth: That whereas, under an order of the Honorable W. E. Thomas, Judge of the superior court of Colquitt County, Georgia, signed on the 1st day of January, 1927, in the matter of Bank of Doerun, the party of the first part was authorized, as superintendent of banks, to sell to the trustees representing the depositors and creditors of the said Bank of Doerun, the assets of said bank in settlement of their claims against the said Bank of Doerun and the assets thereof in the possession of the superintendent of banks; and whereas the parties of the second part have been selected as trustees of the depositors and creditors of the said Bank of Doerun, and hold duly executed powers of attorney, authorizing them to represent the said depositors and creditors and to make the purchase and accept the transfer of the assets in accordance with said order,

"Now therefore, in consideration of the premises and the sum of $10 cash in hand paid, receipt whereof is hereby acknowledged,

as well as in consideration of the release and relinquishment of the claims of the depositors and creditors of the Bank of Doerun against the said Bank of Doerun and against the assets of said bank in the possession of the superintendent of banks, the party of the first part has granted, bargained, sold, aliened, conveyed, confirmed, transferred, assigned, and set over to, and does by these presents grant, bargain, sell, alien, convey, confirm, transfer, assign, and set over to the parties of the second part, trustees as aforesaid, and their successors in trust, all of the assets of the said Bank of Doerun, including its real estate and interests therein, personal property, notes and bills receivable and choses in action, its cash and cash items, balance with correspondent banks and funds on deposit, securities and collaterals pledged to secure loans, and all other assets of every kind and character, all of said assets being conveyed and transferred as of the 1st day of October, 1926, on which date the said Bank of Doerun was placed in the possession of T. R. Bennett as superintendent of banks, the predecessor of the party of the first part. Said assets are conveyed and transferred subject to all valid liens, pledges, trusts, and agreements existing on said date. Also the assessment of 100% levied by the superintendent of banks against the stockholders of the said Bank of Doerun.

"To have and to hold all and singular the above-described assets of every kind, in as full and ample a manner as the said Bank of Doerun and the party of the first part had and held the same. But in trust, nevertheless, for the following uses and trusts and purposes, that is to say, to sell, collect, and reduce to cash all of said assets and to apply the proceeds thereof: First, to the expenses of liquidation already incurred, and those which may be incurred prior to the transfer of said assets to them. Second, all claims entitled to priority under the banking act; and third, fifty per cent. of the claims of depositors and other general creditors, said payment to be made in three equal annual installments." Signed, sealed, and delivered.

On August 20, 1927, after allowing amendments to the petition and the answer, the court passed an order that the resignation of said trustees be accepted without prejudice to their liability under the law; that the assets and affairs of said bank be surrendered and delivered to the superintendent of banks, to be administered by

him according to law; and that he show cause why he should not be made a party. On August 31, 1927, upon motion of plaintiffs' counsel that a receiver be appointed, the court ordered: "that the order previously passed, . . directing the trustees of the Bank of Doerun to deliver the assets of said bank to A. B. Mobley, superintendent of banks, . . and that the same be taken charge of by him and administered as required by law, be reaffirmed;" and that said superintendent in liquidating and administering the assets of said bank is hereby given all of the power in this case which is given by statute generally in such cases.

On September 5, 1927, the court passed an order that Mobley, superintendent of banks, be made a party in this action; that he take charge of the Bank of Doerun and its assets, and forthwith administer the same as required by law in such cases; and "that said superintendent is ordered to comply with such relevant orders as have heretofore been passed in this cause, and to that end he have and exercise all of the powers granted by law to the superintendent of banks in the liquidation of insolvent banks." The superintendent of banks excepted, alleging that the judgment was contrary to law and equity, and that the court should have refused to pass the order requiring the superintendent of banks to retake the assets which had been previously owned by the Bank of Doerun and administer the same in accordance with the banking laws. In a cross-bill of exceptions the original petitioners insist that the transfer of the assets of said bank to Cooper and others as trustees for depositors and creditors was null and void, for the reason that it was without consideration, was a transfer to those who were beneficially interested in said assets, and to those who had the right to manage and control the same, and was unauthorized by any statutory enactment; and that even if said transfer was valid, a receiver should nevertheless be appointed, for the reason that the proof disclosed misappropriation of the assets by the trustees, and injury to the owners because of failure to collect the assets and diligently administer them as required by law.

*O. A. Park, C. N. Davie,* and *J. F. Kemp,* for plaintiff in error.

*H. A. Wilkinson, R. R. Marlin, J. O. Gibson,* and *R. A. Cooper,* contra.

RUSSELL, C. J. (After stating the foregoing facts.) The plaintiffs in error in both bills of exceptions assign error upon the re-

turn of the assets to the superintendent of banks, but upon entirely opposite grounds. The original petitioners insist that the court should have appointed a receiver, because the purported sale of the assets of the bank to the parties named in the contract is absolutely void; that the transaction did not amount to a sale, and that it was a mere delegation of the authority conferred by law upon the superintendent of banks to certain trustees who, in behalf of the creditors and depositors, were to liquidate the bank, instead of that duty being performed by the superintendent of banks himself. The plaintiff in error in the main bill of exceptions insists that the sale was valid; that the bank superintendent had authority to make the sale and to transfer all of the assets of the bank mentioned in the contract; that the consideration was sufficient; and that the court was without authority to avoid the sale, for the reason that the superintendent of banks is not subject to the direction or control of any court, by reason of the fact that he is an agent of the executive department of the State, being accountable for the performance of his duties and liable to be removed by the Governor.

We shall first inquire as to the validity of the contract; for if the agreement involved in this case was such as is not authorized by law to be approved by the judge, it would seem to follow that there would remain only the single question as to whether the judge erred in returning the assets to the superintendent of banks, and in not appointing a receiver. Under the provisions of section 7 of article 7 of the banking law of 1919 (Acts 1919, pp. 135, 156), "Upon taking possession of the assets and business of any bank, the superintendent is authorized to collect all moneys due to such bank, and to do such other acts as are necessary to conserve its assets and business, and shall proceed to liquidate the affairs thereof, as hereinafter provided. The superintendent shall collect all debts due and claims belonging to such bank, and by making application to the superior court of the county in which such bank is located, or to the judge thereof if said superior court be not then in session, may procure an order to sell, compromise, or compound any bad or doubtful debt or claim, and on like order the superintendent may sell the real and personal property of such bank on such terms as the court, or the judge thereof, shall direct; but on any such court proceedings the bank shall be made a party by proper notice issued from the court, and the hearing of any such application or petition by the

superintendent may be had at any time, either in term or vacation, after the bank has had five days notice of such application." By act approved August 21, 1922 (Acts 1922, pp. 63, 65), section 7 of article 7 which we have just quoted was amended by the insertion of section 7a, as follows: "For the purpose of executing any of the powers and performing any of the duties hereby conferred upon him, the superintendent may, in the name of the bank, institute, prosecute and defend any and all actions, suits, and legal proceedings, including suits against its directors or officers, or any of them, upon any cause of action which is vested by law in such bank or in the stockholders or creditors thereof. He may, in the name of the bank, execute and deliver any and all deeds, assignments, bills of sale, transfers, satisfactions, or other instruments necessary or proper to effectuate any sale, lease, or transfer of real or personal property, or to carry into effect any power conferred or duty imposed upon him by this act or by any order of the superior court. Any instrument executed pursuant to the authority hereby given shall be as valid and effectual, for all purposes, as though the same had been executed by the proper officers of the bank by authority of its board of directors. He may, when in his opinion it is necessary, in order to fully protect and benefit the said bank and its creditors to the extent of any and all equities which said bank may have in any property, real or personal, by reason of any mortgage, assignment, security deed, or other proper legal claim attaching thereto, buy in said property or pay off such secured claim, and is hereby authorized and empowered to use any of the funds of said bank for that purpose to the extent the same may be necessary or required. He may, in the name of said bank, when in his judgment it is for the best interest of the said bank and its creditors, renew or extend, for limited periods, any of the notes or other bills receivable of said bank."

While this amendment enlarged the powers of the superintendent of banks, so far as sales of any of the assets of the bank of any kind are concerned, the provisions of original section 7 were not altered, although the powers of the superintendent were so largely extended that learned counsel for plaintiff in error says that the questions involved in this case are: "(1) Is a sale of the assets of an insolvent bank, made by the superintendent of banks to trustees for depositors and creditors in consideration of 'a sum suf-

ficient to pay the depositors and common creditors 50% of their claims in three annual equal installments,' and the expenses of liquidation and all preferred claims against the bank, the sale being approved by the judge of the superior court after notice to the bank, a valid sale under article VII, paragraph 7 of the banking act? (2) Where such a sale has been made, has the superior court the right to set it aside and direct the superintendent to take charge of the assets and administer them as though such sale had not been had?" In opposition to the contentions of the superintendent of banks the plaintiff in error in the cross-bill insists: "(1) That the sale of the assets of the Bank of Doerun to W. M. Smith et al., as trustees for depositors and creditors, upon the conditions stated is void: (a) Because there was no change in the beneficial ownership. (b) There was no consideration. (c) The stockholder's liability may not be transferred by the superintendent, but under section 7, article 18 of the banking act 'may be enforced only by and through the superintendent of banks.' (2) In such event the superintendent of banks is the proper officer to possess and liquidate the assets of the bank and a proper party to this proceeding. (3) If the sale in question be held valid, the trustees having resigned, a receiver should be appointed."

We shall consider whether the liability of a stockholder for an assessment of 100 per cent. upon the par value of his stock can be transferred by the superintendent of banks to a purchaser of the assets of an insolvent bank which has been placed in the possession of the superintendent of banks. Section 7 of article 18 of the banking act of 1919 (p. 190) declares that "The individual liability of stockholders . . shall be assets of such bank, to be enforced only by and through the superintendent of banks." In order to constitute a sale of a chose in action there must be a transfer to the assignee of the right to proceed in the collection of the debt. The question therefore arises whether the superintendent of banks as an officer of the State can delegate to any assignee the power of enforcing an assessment which the law has said can be enforced only by and through the superintendent of banks. The precise question was not passed upon by Judge Sibley In re Giles, 21 Fed. (2d) 536, but we deem his opinion upon this question, while not at all binding, as persuasive authority entitled to weight. In the case in the United States court the bankrupt, Giles, was a stock-

holder in an insolvent bank, and the receiver sought to prove his preferred claim, an execution issued upon an assessment against the stockholder under his liability to depositors, which was recorded on the execution docket more than four months prior to the bankruptcy. The execution, directed to all and singular the sheriffs of the State, was signed "T. R. Bennett, Superintendent of Banks, by W. J. Davis, General Agent." It was stipulated that Davis determined on the assessment and issued the fi. fa., and the question was whether this could lawfully be done by an agent. Davis was acting by virtue of a power of attorney of file in the office of the superintendent of banks, signed by the superintendent, and purporting to be made by authority of sections 9 and 19, art. 7 of the Georgia banking act of 1919 (Acts 1919, p. 135), and to "appoint W. J. Davis general agent to supervise the liquidation of all banks now or hereafter placed in liquidation, and to make distribution of the assets, as provided by law, and until and unless this power and appointment be revoked. . . He is authorized to do and perform such duties in connection therewith as I might and could in person do and perform." In the opinion Judge Sibley said:

"The act of 1919 establishes a State department of banking, and authorizes the appointment, as its head, of a superintendent of banks, who is to have specified qualifications of age, character, and experience, is to take an official oath, and give a fixed bond. By section 10 of article 2 the superintendent must appoint an assistant superintendent and needed bank examiners, each of whom must take the same oath and give bond. The assistant is authorized to act as superintendent in cases mentioned in article 2, § 3. Article 7 deals with failed banks, and section 9 thereof provides: 'The superintendent may, under his hand and official seal, appoint an agent to assist him in taking possession of, liquidating, and distributing the assets of any bank under the provisions hereof. . . The superintendent may authorize such agent to perform such duties connected with such liquidation and distribution as the superintendent himself could in person do and perform.' By section 23, the compensation of the agent is to be paid from the assets of the liquidated bank. Section 10 contains nothing important here. Section 20 of article 7, as amended in 1925 (Acts 1925, p. 130) provides: 'Within ninety days after the superintendent of banks has taken possession of the assets and business of any bank, as in this

act authorized, he shall make a careful estimate of the values of the cash assets of said bank which can probably be converted into cash within one year after so taking possession of the assets and business of said bank, and of the amount of such cash assets which will be available to pay depositors, and he shall immediately thereupon make an assessment upon the stockholders of said bank sufficient, when added to the cash assets so available for depositors, to pay the said depositors in full; provided that such assessment shall not exceed the liability of stockholders upon their said stock. Notice of such assessment shall be given by mail to each of the stockholders of said bank; and if any stockholder so notified shall refuse or neglect to pay any such assessment within thirty days after the levy of such assessment and notice thereof, the superintendent of banks shall issue an execution against said stockholders for the amount of said assessment, which shall be enforced in like manner as executions issued by the superior courts of this State upon judgments regularly rendered by said courts; provided, however, that any stockholder shall have the right by affidavit of illegality, as in cases of affidavits of illegality to other executions, to contest his liability for such assessment and the amount and necessity thereof. . . Said execution shall be a lien on all property of the defendant subject to levy and sale, for the amount which shall be adjudged to be due thereon from the date of the issuance thereof by the superintendent.' By the words of section 20, it is the duty of the superintendent of banks to determine on the assessment and issue the execution, and to enforce it if not paid.

"A public officer is in a large sense an agent, and falls within the general rule that an agent in whom is reposed trust and confidence, or who is required to exercise discretion or judgment, may not intrust the performance of his duties to another without the consent of his principal; but, having exercised his discretion and determined the propriety of an act, he may delegate to a subagent the execution of merely mechanical, clerical, or ministerial acts not involving judgment or discretion. 31 Cyc. 1425, 1428. Specifically of public officers it is said: 'In those cases in which the proper execution of the office requires on the part of the officer the exercise of discretion and judgment, the presumption is that he was chosen because he was deemed fit and competent to exercise that judgment and discretion, and, unless power to substitute another in his place

has been given him, he can not delegate his duties to another.' Even where the act is purely ministerial or executive in its nature, where the law expressly requires it to be performed by the officer in person, it can not be delegated to another. Mechem on Public Offices and Officers, §§ 567, 568, quoted in *Horton* v. *State,* 112 *Ga.* 27, 37 S. E. 100, in holding that none but the clerk himself can issue a subpœna for a witness. So it is generally held that a notary can not act by a deputy in presenting and protesting commercial paper. 29 Cyc. 1091. If these lesser officers can not, without legislative sanction, act through another, it requires no argument to establish that the head of the State banking department must use his own judgment in such important matters as determining the solvency of a bank or the probable sufficiency of its assets to pay depositors, or the amount of the insufficiency, or the necessity for present enforcement of the stockholders' liability. Such drastic power as that of issuing final process before a judicial hearing, of commanding the assistance of all sheriffs of the State, and of fixing a recorded judgment lien upon all the property of each stockholder unless it shall be vacated by a successful litigation, surely is official power. These things have been held nonjudicial and executive as respects the unconstitutional commingling of judicial and executive powers [*Coffin* v. *Bennett,* 164 *Ga.* 350 (138 S. E. 670)], but that does not prove them to be so devoid of official nature as to be delegable to another. The analogous power of assessment in the Comptroller of the Currency in the national banking act is also held nonjudicial in the same sense (Bushnell *v.* Leland, 164 U. S. 684, 17 S. Ct. 209, 41 L. ed. 598), but it is often referred to as quasi-judicial (Deweese *v.* Smith [C. C. A.] 106 F. 438, 66 L. R. A. 971, affirmed, 187 U. S. 637, 23 S. Ct. 845, 47 L. ed. 344; Aldrich *v.* Campbell [C. C.], 97 F. 663; Weitzel *v.* Brown, 224 Mass. 190, 112 N. E. 945). That the comptroller's power is nondelegable seems to be assumed in Adams *v.* Johnson, 107 U. S. 251, 2 S. Ct. 246, 27 L. ed. 386, where it was held that his letter directing the assessment was sufficient evidence of his action in the matter.

"The question therefore narrows to whether the legislature has provided for a delegation of the power by section 9 of article 7 of the act of 1919. That section seems to contemplate the appointment of a liquidating agent for each bank taken in charge by the superintendent. There is nothing, however, to prevent the same agent

acting for two or for all banks in liquidation, if he is equal to the task. We pass, therefore, without discussing, the extreme breadth of the appointment involved in this case, to take up the construction of the section. Its concluding language, permitting authority to the agent 'to perform such duties connected with the liquidation and distribution as the superintendent himself could in person do and perform,' can not be taken in its fullest sense, because to do so would merely substitute the agent for the superintendent, and be a practical abdication of his functions, whereas the opening words of the section state that the appointment is of an agent to *assist* him. Since the agent takes no oath and is not paid from the public treasury, and is in no sense a public officer, it is unlikely that the broader powers of the superintendent of banks were intended to be transferred to him. There is no express mention of the stockholders' liability or the assessment therefor. It is true that section 7 of article 18 declares that the individual liability of stockholders 'shall be assets of such bank to be enforced only by and through the superintendent of banks.' Undoubtedly this provision deprives the depositors of any right of action themselves, and requires collection of the stockholders' liability to be through the banking department and as a part of the liquidation of the bank; but the language is that it shall be enforced only by the superintendent of banks, without mention of any deputy or agent who might act for him. Again, in section 20 of article 7, although the agents in question had been authorized just above, the legislature makes no reference to them in providing for the assessment of the stockholders' liability and the issuing of executions, but again names the superintendent of banks alone as the person to act. Taking all these provisions together, the reasonable conclusion is that the legislature did not intend, by the general and loose words at the end of section 9, to confer on possibly numerous agents, who are not officers and have taken no oath as such, powers so plainly official as some of those set forth in section 20. I do not mean that the superintendent may not rely on figures and reports furnished him by agents or others, or may not adopt their recommendations, as it was held that the State comptroller might do in issuing somewhat similar fi. fas., provided he finally acted on his own judgment. *Scofield* v. *Perkerson, 46 Ga.* 325, 350. No doubt also the agent may figure out the details of the assessment and give the notices and carry out similar

ministerial and clerical matters, as the receiver seems to have done in Bowden v. Johnson, supra; but the superintendent must determine the necessity of the assessment and its amount, and direct it to be made, and himself must issue the executions to enforce it, if executions are necessary."

The similarity between the provisions of our State banking act and those of the national banking act upon several subjects has frequently been observed by this court. In the recent case of Jackson v. McIntosh, 12 F. (2d) 676, the Circuit Court of Appeals held that the provision of Rev. St. § 5234 (Comp. St. § 9821), that on order of the court the receiver of a national bank "may sell all the real and personal property of the association," does not authorize a disposition of such property which is not a sale, and that a change in the beneficial ownership of the thing dealt with, and a price paid or promised, and certain or capable of being ascertained, are essential ingredients of a sale. Both of these principles are involved in the decision in the case at bar; for it was insisted by the petitioners in the lower court that the contract by which the superintendent of banks in the case at bar transferred all of the assets, including the assessment of 100 per cent., to the trustees named in the contract did not effect a change in the beneficial ownership, and was without consideration, as well as otherwise in violation of the banking act of 1919. In Jackson v. McIntosh, the Circuit Court of Appeals held that a proposed transfer of all of the assets of the Georgia National Bank of Athens (with certain reservations) by its receiver to a corporation organized for the purpose, in consideration of the delivery of its debentures to the receiver for the amount due each creditor, payable, with interest, on or before five years, and secured by the assets conveyed, to be placed under control of trustees, and the agreement of the corporation to apply the proceeds of such assets, above expenses of their liquidation, to the payment of the debentures until fully paid, but without liability of the corporation or its stockholders, is not a sale of the assets, within Rev. St. § 5234 (Comp. St. § 9821), but is a delegation to the corporation of the receiver's statutory duty to collect what is owing to the bank, and the receiver is without authority, with or without the court's approval, to make such transfer.

Comparing the provisions of the sale proposed in the McIntosh case, supra, with the contract made with the superintendent of

banks in the present case, it is very hard to draw any distinction so far as the application of the principle involved is concerned. The proposition in the McIntosh case was to pay the creditors in full at the end of five years, whereas in the present case the trustees who offered to purchase the assets agreed to pay only 50 cents on the dollar. In the McIntosh case the assets were to be used entirely to discharge the debentures, and the same is true in the case at bar; but in neither case was there any present payment of anything, or the payment of any portion of the obligation by any outside fund contributed or to be furnished and paid by the would-be purchaser. And certainly, under the facts in the instant case, the proposed transfer involved a delegation to the trustees of the statutory duty of the superintendent of banks to collect what is owing to the bank, as a similar transfer was held by the court in the McIntosh case to be a delegation to the corporation of the receiver's statutory duty to collect the assets of the bank. "Under section 5234 of the United States Revised Statutes (Comp. St. § 9821), a national bank receiver, 'upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct.'" Section 7 of article 7 of the banking act of 1919 says that "Upon taking possession of the assets and business of any bank the superintendent is authorized to collect all moneys due to such bank, and to do such other acts as are necessary to conserve its assets and business, and shall proceed to liquidate the affairs thereof, as hereinafter provided." The language of the last sentence is "The superintendent shall collect all debts due and claims belonging to such bank, and, by making application to the superior court of the county in which such bank is located, . . may procure an order to sell, compromise, or compound any bad or doubtful debt or claim, and on like order the superintendent may sell the real and personal property of such bank on such terms as the court, or the judge thereof, shall direct." It will be noticed that the last paragraph is in the same language as that portion of section 5234 of the Revised Statutes of the United States, construed by the Circuit Court of Appeals in the McIntosh case, except that after the word "court" the words "or the judge thereof" are inserted in the State banking act, whereas in the Federal act only the word "court" is used. The

same lack of authority inheres in the present case as is pointed out by Judge Walker in the McIntosh case, supra, in that the application in the case at bar made "no mention of bad or doubtful debts, but invoked the exercise of the court's power to order a sale of the real or personal property of the bank." So we are of the opinion, that, as "the proposed disposition of property of the bank was challenged on the ground that it was not a sale within the meaning of the above-quoted statute," and not consistent with other statutory provisions with reference to the administration of a bank's assets placed in the hands of the superintendent of banks, the court did not err in declaring the same invalid.

The contention is also made that the superintendent of banks is an executive officer appointed by the Governor, and that in the exercise of his duty he is an administrative official, not subject in any event to the action of the court; and for that reason that the court erred in attempting to revoke his prior order in this case. Upon this subject the Circuit Court of Appeals, in the McIntosh case, supra, said: "In behalf of the appellees it was contended that the application for or the making of such an administrative order as was sought could not be interfered with by injunction. It has been held that such a proceeding by a receiver is an ex parte one, and that an order made therein is not subject to be appealed from by a creditor of the bank. Fifer *v.* Williams (C. C. A.), 5 F. (2d) 286. The following was said in the opinion in that case: 'For an attempt to make an illegal or fraudulent sale, doubtless, a remedy by suit would lie, and from a decision in such a suit appeal could be taken to this court.' The appellants have such an interest in the bank's assets as to be entitled to resist an illegal disposition of them. In the circumstances disclosed, no adequate legal remedy was available, and a court of equity properly could be applied to for relief." And so in the present case, as the right of the superintendent of banks to the order obtained depended in the first instance upon the superior court then in session, to which the superintendent applied for the order he obtained authorizing the sale, it can not be said that the same court, in the exercise of its jurisdiction as a court of equity, could not revoke an order when it was seen that it was improper in the first instance, and especially when it was apparent that the order itself was not being obeyed. Under the provisions of our Code, § 5479, equity may intervene in any

case where there is a fund in which creditors or other persons are interested, which is likely to be wasted or destroyed, in order to preserve the rights and interests of parties in property which has been abandoned. In the case at bar the trustees who had entered into the purported contract of purchase had all resigned. It therefore appears from the record that no one was in charge of the fund. That equity will never let a trust fail for want of a trustee is one of the fundamental principles of equity; and for this reason we think that the superior court of Colquitt County had full jurisdiction to entertain the present proceeding.

Clearly a sale was not effected in this case, because the creation of an agency for handling and the administration of assets and the payment of the proceeds to those who are entitled to such assets is not a sale of them. A change in the beneficial ownership of the thing dealt with is an essential ingredient of a sale, and this must be accompanied by a price certain or capable of being ascertained. Butler v. Thomson, 92 U. S. 412 (23 L. ed. 684) ; Gockstetter v. Williams (C. C. A.), 9 F. (2d) 354. To paraphrase the words of Judge Walker in the McIntosh case, supra, without a real sale, then, the assets of the Bank of Doerun were to be surrendered by the superintendent of banks and be made subject to be sold by the trustees instead of by the superintendent of banks with the approval of the court. Under section 1 of article 7 of the banking act, "the superintendent himself, or by a duly authorized agent, shall forthwith take possession of all the assets and business of such bank and retain possession thereof until such bank shall be authorized by him to resume business, or its affairs be liquidated as herein provided." The effect of the proposed transaction would be a delegation to the trustees of the superintendent's duty and authority to collect what was owing to the bank, and a surrender of the assets of the bank by the superintendent was not authorized either with or without the court's decree to so delegate his powers or to make such a surrender of the assets. Jackson v. McIntosh, supra.

Having held that the court was authorized to hold the attempted sale illegal and void, the question arises whether the court erred in returning the assets of the bank to the superintendent of banks. The superintendent insists that the court had no right to direct him to take charge of and administer the assets of the bank. It is insisted in the cross-bill of exceptions that if the attempted sale

was valid the bill for a receiver was well laid, and it is argued in the brief that in any event, as the trustees had resigned, a receiver should have been appointed, citing Civil Code (1910), § 5479, and *McFerran* v. *Davis,* 70 *Ga.* 661 (3, 4), in support of the proposition that in any view of the case, after the resignation of the trustees, a receiver should have been appointed.   In the *McFerran* case it was held that "By § 274 [§ 5475] of the Code it is provided that when any fund or property may be in litigation, and the rights of either of the parties can not be otherwise fully protected, or when there may be a fund or property having no one to manage it, a receiver may be appointed to take charge of the same.   And § 3941 [§ 5479] also provides that a court of equity may appoint a receiver to take possession of and hold, subject to the direction of the court, any assets charged with the payment of debts, when there is manifest danger of loss or destruction, or material injury to those interested.   And the assignee having resigned, a case arose for the appointment of a receiver to take charge of the assets, and made it the duty of the chancellor, upon a proper application therefor, to make such appointment."   However, having held that the attempted sale in this case was void, we are of the opinion that under the provisions of the banking act the court did not err in ordering that the assets be taken charge of by the superintendent of banks. Under the provisions of section 1 of article 7 of the banking act of 1919, we think it was the duty of the superintendent of banks when it appeared that the would-be liquidators or trustees, to whom he had delivered the assets of the bank, had violated the contract and were doing nothing towards the payment of the creditors and depositors of the Bank of Doerun, to resume possession; and if he was declining to perform this duty, we think it was within the jurisdiction of the court, under the principles referred to by Judge Crawford in the *McFerran* case, supra, to designate him as the receiver, this court having several times held that in his capacity as superintendent of banks he is in effect a statutory receiver.

   *Judgment affirmed on main bill of exceptions; cross-bill dismissed.   All the Justices concur, except Gilbert and Hines, JJ., who dissent.*