#### 19933. STOGNER v. BROOKS *et al.*

DECIDED NOVEMBER 13, 1929. REHEARING DENIED DECEMBER 10, 1929.

*Betty R. Cobb, Leon Hood,* for plaintiff.

*Boykin & Boykin, Harry S. McCowen, Underwood, Haas & Gambrell, C. N. Davie,* for defendants.

LUKE, J. "A. B. Mobley, for the use of Jesse R. Stogner," brought an action against J. B. Barnes, L. E. Wilson, W. L. Brooks, and J. G. Smith, residents of Carroll County, Ga., and National Surety Company, a foreign corporation having an office and place of business in Fulton County, Ga. The petition was twice amended, once on November 21, 1928, and again on June 11, 1929. J. B. Barnes was not served with process. The other defendants demurred generally and specially. On June 11, 1929, the court sustained the demurrers and dismissed the case. By proper exceptions the defendants question the correctness of this judgment.

We shall not set out fully the lengthy petition in this case. We deem it necessary, however, to give the gist of it, beginning with paragraph 2. The original petition, brought to the September term of the city court of Carrollton, 1928, alleges: That Jesse R. Stogner was a creditor of the Georgia State Bank, at Bowdon, Ga., and that said bank is indebted to him in the sum of $1,088.80, represented by time certificates, and the further sum of $300, deposited in said bank on a checking account.

■ That on July 13, 1926, said bank was surrendered to T. R. Bennett, superintendent of banks, for liquidation.

■ That on October 11, 1926, said Barnes, Wilson, Brooks, and Smith purchased from said superintendent of banks the assets of said bank for the purpose of reducing them to cash and distributing them among the creditors entitled thereto, said "trustees entering into said contract in consideration of the settlement and satisfaction of the claims of the depositors and other creditors against the Georgia State Bank and its assets."

■ That as part of said contract, which was attached to the petition as Exhibit A, said trustees accepted the conveyance of said assets in trust for the following purposes: "to sell, collect, and reduce to cash all of said assets, and to apply the proceeds thereof, first, to the payment of the expenses of taking over, auditing, and liquidating the said bank by the superintendent of banks; second,

to the payment of all claims entitled to priority of payment under the banking act of 1919 and the amendments thereto in order of priority as fixed by law; third, to the payment of the balance to the depositors and general creditors of said bank pro rata; fourth, any and all amounts collected by the parties of the second part (the trustees) from the assessments against the stockholders of the Georgia State Bank residing in Carroll County, to be paid pro rata to the depositors only, and to be used for no other purposes."

■ That, as a part of said contract, said trustees entered into a contract in the penal sum of $15,000, with the National Surety Company as surety, with the superintendent of banks and his successors in office, whereby they, "as trustees," undertook to liquidate the assets of said bank "and pay out the same in accordance with the priorities fixed by law, and under the terms of the conveyance of said assets this day executed," and "to protect and save harmless the Georgia State Bank and the superintendent of banks against the claims of such of the creditors of said bank as had not signed power of attorney authorizing said trustees to represent them." A copy of said agreement was attached as exhibit B.

■ That said trustees took over said assets and "began the active liquidation of said bank under said contracts and agreements."

■ That said trustees did not send out any notices to the depositors and creditors of said bank to file proofs of their claims, and that said Stogner, who was then, and now is, in the penitentiary under a life sentence, did not receive any notice; but that his claims as set out appear on the books of the bank, and are to be taken as prima facie correct.

■ That said trustees applied said assets to the payment of their claims and the claims of other favored creditors and depositors in full, paying nothing to said Stogner.

■ That said trustees did not keep accurate records of their various transactions, and improperly expended the assets of said bank for automobiles, groceries, "and other individual expenses," which were charged against the assets of said bank.

■ That said trustees conveyed to themselves and other favored depositors and creditors the greater part of the assets of said bank, consisting of real estate, notes receivable, and other property, in payment of their claims.

■ That said trustees accepted from various debtors of said bank conveyances of property, and transferred the same to themselves, or to other favored depositors, in settlement of their claims against said bank.

■ That said trustees used the funds of said bank which should have been distributed to creditors, to pay off liens against real estate belonging to said bank, "in order that they might transfer the unincumbered property to themselves or to other favored creditors."

■ That most of the property transferred by said trustees to themselves and to other favored depositors was transferred for less than its appraised value, thereby entailing a loss to the other creditors and preferring said transferees.

■ That when said bank closed, J. B. Barnes and his wife had therein a joint deposit of $13,500, W. L. Brooks a deposit of $16,915.78, and L. E. Wilson a deposit of $8,400, represented by time certificates.

■ That by manipulation of the assets of said bank in the manner hereinbefore set out, all of said trustees, except Wilson, who claims a small deposit of $78.64, have secured payment in full of their claims.

■ That said trustees not only paid themselves out of said trust assets, leaving other creditors unpaid, but they paid most of the local depositors by transferring to them property of the bank which should have been paid ratably to the general creditors.

■ That said trustees, in the manner aforesaid, reduced the demand deposits in said bank from the sum of $139,943.03 to $14,-819.78.

■ That said trustees reduced the savings account from $36,-352.65 to $3,701.42.

■ That said trustees reduced the certificates of deposit from $148,521.26 to $28,368.11, said last sum including a certificate held by the town of Bowdon for $8,985.36; and that they violated their duty, to the injury and damage of petitioner, by paying the claim of said town before paying any other general creditors.

■ That said trustees reduced the cashier's checks outstanding from $16,147.56 to $89.27.

■ That said trustees paid in large part the local accounts due by said bank, leaving unpaid accounts due nonresidents; that when said bank closed, the accounts, amounting to $4,297,11, were re-

duced by said trustees to $2,557.03; and that included in the amount paid was an attorney's fee of $1,557.16, and an automobile account due trustee J. G. Smith, amounting to $163.

■ That said trustees "encouraged favored creditors to buy up claims of other depositors against said bank, and to use claims so purchased, in taking over the assets of the bank, these transactions resulting in gross inequalities between the depositors and illegal preference to those who were thus favored."

■ That while said trustees, in the manner aforesaid, have taken care of themselves and paid off a large part of the depositors and local creditors of said bank, they have paid petitioner nothing.

■ That when the bank was closed its assets of $579,554.65 "were nominally in excess of its liabilities" by $47,869.42; that the appraised value of said assets was $450,857.13; and that included in the items regarded by the appraisers as worthless were notes receivable in the sum of $115,054.34.

■ That after said trustees had liquidated said bank in the manner set out, and had sapped its lifeblood, they resigned, and a receiver was appointed to take charge of the "remaining practically worthless assets."

■ That the total nominal value of the assets turned over to the receiver was $169,673.81, including assets which had been appraised as worthless, as hereinbefore set out.

■ That, with the exception of the bank building, which was sold to the town of Bowdon in payment of its preferred claim of $8,985.36, the remaining assets turned over to the receiver are not worth more than five per cent. of their nominal value.

■ That the liabilities unpaid when said receiver was appointed amounted to $115,526.74.

■ That though said trustees have disposed of over ninety per cent. of the assets of said bank, not one cent has been paid to the depositors and general creditors pro rata.

■ "Your petitioner therefore charges that the said trustees have violated their agreement with the superintendent of banks as hereinbefore set out, and that they have breached their trust in every conceivable manner in thus dissipating the assets of said bank, in paying themselves in full their claims against it, and in settling with various creditors by permitting them to buy up claims of other depositors, thus creating inequalities among the depositors,

and have left unprovided for the claims of your petitioner; and the said trustees as aforesaid, and the National Surety Company, of New York, are, therefore, liable to your petitioner in the full amount of his deposit on their said contract entered into with T. R. Bennett, superintendent of banks, and his successors in office on the 19th day of October, 1926, hereinbefore referred to as Exhibit B.

That petitioner has never signed any power of attorney authorizing said trustees to act for him, and is therefore embraced in that class of depositors set out and described in Exhibit B.

That "under the contract by which the trustees took over the assets of said bank, they undertook to pay the claims entitled to priority under the banking law, and then distribute pro rata to the general creditors of the bank," and that "their failure to do this is a breach of trust for which they are personally liable to your petitioner."

On September 8, 1928, W. L. Brooks, L. E. Wilson, and J. G. Smith filed a ten-page demurrer to said petition, the important part of which, by paragraphs, is as follows:

1. The petition fails to set out a cause of action against these defendants.

2. "This action brought against these defendants and the National Surety Company is a misjoinder of parties defendant."

3. The petition shows no legal liability against defendants.

4. "Plaintiff fails to show by what right the said obligee in said bond sues for the use of Jesse R. Stogner."

5. The petition shows that no legal obligation was created in favor of Jesse R. Stogner by said bond, and that he is not entitled to institute an action thereon either in his own name or in the name of A. B. Mobley.

6. The petition shows that said claim of Jesse R. Stogner is not a legal liability against defendants under the bond sued on, for the reason that the bond provides as follows: "Now, therefore, when the said above bounden trustee well and truly protect, indemnify, and save harmless the said Georgia State Bank and the superintendent of banks against the claims of such depositors and creditors of said branch bank, which may be proved and asserted within one year," etc.; said petition showing on its face that said Stogner's claim was not proved or asserted within one year.

7. The petition fails to show that any loss was sustained by

either the Georgia State Bank or the superintendent of banks on account of the claim of Jesse R. Stogner.

10. Paragraph 5 of the petition should be stricken because the same, with the exhibit attached thereto, shows that the contract alleged to have been entered into was illegal and void under the banking act of 1919 and the amendments thereto.

11. "Defendants demur to paragraph 6 specially, and say that if a contract was made of the character as therein alleged, that the said contract is void, and that the bond given in pursuance thereto is nugatory and without force and effect, and that the same should be stricken and the said exhibit thereto."

The paragraphs of the foregoing demurrer which are not given are special grounds which we deem it unnecessary to set out.

The demurrer filed on September 4, 1928, by National Surety Company is so similar to the foregoing demurrer that it would be repetition to set it out.

On November 21, 1928, the petition was amended by "striking from said suit, wherever it occurs, the name of 'A. B. Mobley, superintendent of banks, for the use of,' so that said suit shall proceed in the name of Jesse R. Stogner, the real party plaintiff." By this amendment the Georgia State Bank at Bowdon, T. R. Bennett, the Fidelity and Deposit Company of Maryland, A. B. Mobley, superintendent of banks, and United States Fidelity and Guaranty Company were made defendants. T. R. Bennett's liability was predicated upon "a breach of trust that he owed your petitioner as such superintendent of banks," by turning over the assets of said bank to said trustees, and permitting them to mismanage them; it being alleged that T. R. Bennett and the Fidelity and Deposit Company of Maryland, the surety on his bond "to faithfully perform all the duties of his office," were liable to petitioner by reason of the said obligation. It was alleged that A. B. Mobley qualified as superintendent of banks of Georgia on January 1, 1927, and was charged with the liquidation of the assets of said bank; that said Mobley made bond, with United States Fidelity and Guaranty Company as surety, faithfully to perform his duties as such superintendent; that he neglected to administer the assets of said bank and permitted said trustees "to squander, dissipate, and dispose of, illegally and contrary to law, all of said assets of said bank;" and that said Mobley and said surety "are liable to your petitioner on said bond."

The amendment to the petition, of June 11, 1929, struck from paragraphs 5 and 6 of the first amendment the words, "for which he prays to recover a judgment," so that these paragraphs merely alleged that the Georgia State Bank was indebted to petitioner in the sums held by him on deposit therein. This amendment further alleged transfers of specified realty and one note by said trustees to themselves and other depositors in settlement of their respective claims.

The National Surety Company renewed its original demurrer, objected to the amendment filed, and further demurred to the petition; the grounds of the demurrer being:

1. Plaintiff's amendment seeks to set forth a cause of action separate and distinct from that sought to be stated in the original petition.

2. Said amendment seeks to set forth an action of tort, whereas the original petition sought to set out an action for breach of contract.

3. "It is sought in the amendment to set forth a cause of action against parties separate and distinct from those named in the original petition, and on a cause of action in no way related to the cause of action sought to be set forth in the original petition."

A. B. Mobley, United States Fidelity and Guaranty Company, and Fidelity and Deposit Company of Maryland, filed demurrers presenting in large measure the same objections to the petition as amended as did the demurrers already outlined. Furthermore, counsel for the plaintiff in error concede in their brief that the amendment of November 21, 1928, created new parties, and that "it was right and proper for the court to have sustained the demurrer as to those defendants." However, no amendment was withdrawn during the trial in the court below, and the court passed upon all the demurrers to the petition as amended; his judgment, bearing date of June 11, 1929, being in this language: "After due consideration of the petition and amendments, and the demurrers, and hearing the arguments of counsel for all parties, both orally and by briefs, in the above-stated case, and after due consideration of the contentions of all parties as to the law governing said case, the suit is hereby dismissed."

If any one of the grounds of a general demurrer is good, the judgment sustaining the demurrer is not erroneous. Therefore we

deem it unnecessary to pass seriatim upon all the grounds of the several demurrers, and shall only advert to some of the important objections common to all the demurrers.

Counsel for the plaintiff in error contend that the action originally set out grounds in tort, and largely base their argument upon this hypothesis. We do not concede the correctness of this contention. Our view is that the various acts of misfeasance, malfeasance, and nonfeasance are pleaded to show a breach of the bond, and that the action is planted directly upon the alleged breach. This is perfectly apparent from paragraph 31 of the petition, wherein the bond is referred to as the "contract of October 19, 1926, attached to the petition as Exhibit B." As to the nature of this bond, see paragraph 6 of the petition.

Unquestionably, the amendments to the petition introduced new parties defendant and new causes of action.

Furthermore, we do not think that either the original petition or the petition as amended set out a cause of action, for this reason. The purported contract between the superintendent of banks and the "trustees" undertook to delegate to such "trustees" a personal trust imposed by law upon said superintendent, and was therefore illegal and void. See *Mobley* v. *Marlin*, 166 *Ga.* 820 (144 S. E. 747). The indemnity bond declared upon was based upon said unlawful contract, and was therefore itself void and incapable of being enforced.

Again, the bond given was "to protect, indemnify, and save harmless the Georgia State Bank and the superintendent of banks." Certainly Jesse R. Stogner as an individual had no right to sue in his own name for a breach of this bond.

The demurrers were good for the reasons indicated, and perhaps for others not stated, and the court did not err in sustaining them and dismissing the petition.

*Judgment affirmed.* *Broyles, C. J., and Bloodworth, J., concur.*