GASKINS *et al. v.* VARN *et al.*

No. 9575.   FEBRUARY 20, 1934.

506

508

*C. A. Christian, E. R. Smith,* and *Little & Dickerson,* for plaintiffs.

*H. L. Jackson* and *Wilcox, Connell & Wilcox,* for defendants.

RUSSELL, C. J. (After stating the foregoing facts.) After a careful study of the bill of exceptions and the briefs of counsel we find no error in the judgment. Under the usual rule applicable to the grant or refusal of interlocutory injunctions, we might forbear further elaboration or discussion of the several contentions by saying that it does not appear that in the refusal of an injunction the judge in any way abused his discretion. The plaintiffs in error rely largely upon the decision of this court in *Mobley* v. *Marlin,* 166 *Ga.* 820 (144 S. E. 747). We are of the opinion that the *Marlin* case is not in point, because it is clearly distinguished by a difference in facts. In the first place, it is conceded by all parties in the case at bar that there was a sale of the assets of the bank to Varn, and that the consideration of the sale had been paid to the depositors and others as agreed upon. In the *Marlin* case this court expressly held that the contract approved by the court, under which

the assets of the Bank of Doerun were delivered to certain persons designated as trustees of the depositors and creditors of the Bank of Doerun, was not a sale; that it was nothing more than the devolution of an agency upon the so-called trustees, clothing them with all the powers of the superintendent of banks in the complete liquidation of the affairs of the Bank of Doerun. Had the court been of the opinion that there was a *sale* (as is in fact admitted in the present case), the court would hardly have overlooked the provision of the banking act, supra, which expressly authorizes the superintendent, by authority of an order of the superior court, to sell all assets of the bank. The contention of the plaintiffs is that they did not make any bargain or agreement whatsoever with reference to a sale of the executions based on the stock assessments, but that the agreement, so far as they were concerned, contemplated only the sale of the other assets, by which they would be relieved of any assessment as stockholders. The fact that they recommended that the court allow the sale of the assets of the bank for a cash consideration of fifty cents on the dollar, under the impression that the sale contemplated only the sale of the other assets, whereby they would be relieved of any assessment as .stockholders, affords no ground for setting aside the judgment as to the sale of the assets. If the sale of all the assets, including the stock executions, to G. W. Varn was valid and title passed, then the stockholders against whom the executions issued are in no way concerned at this time with the amount of money that he and his associates may realize or fail to realize from the assets. The newspaper publication of the date of the hearing of the superintendent's petition to make the sale of the bank's assets informed all parties interested that the court on a named day would pass upon the superintendent's petition. This certainly gave the court authority to include all assets and to specifically name any of them as included within the descriptive term "assets."

It is alleged in the petition that the stock-assessment executions were void because the superintendent of banks did not, before issuing them, make a careful estimate of the value of the assets of the bank that could probably be converted into cash within twelve months, and of the amount of such assets that would be available to pay depositors. An examination of the record discloses that there is no evidence to show that such estimate was not in fact made by the su-

perintendent of banks. It appears that the superintendent made a 100 per cent. assessment against the stockholders of the Citizens Bank of Ray City; and in the absence of evidence that he did not make the estimate required by law, it will be conclusively presumed that it was made. This presumption is embodied in the ancient maxim omnia præsumuntur esse acta, which in English means that all things are presumed to be done in due form. This rule was recognized and followed in *Butler* v. *Mobley,* 170 *Ga.* 265 (152 S. E. 229). In the petition the allegation is made that "had such estimate been made, same would have disclosed that it would have been unnecessary to make stock assessments and issue executions against the stockholders; and for this reason said executions are null and void." This allegation can only refer to an estimate of the value of the assets that could be reduced to cash within twelve months, and is too general and uncertain to raise any question for consideration. Under no view of the law can a stockholder successfully attack an assessment and execution on the ground that there was no necessity for making the assessment, or on the ground that the assessment is excessive, without alleging facts in support of these conclusions and thereafter establishing by proof the allegations of fact. The contention that only $47,000 was required to pay all claims against the bank, including 50 per cent. of its liabilities to depositors, and that a depositors' committee had appraised the assets of the bank at a much greater valuation, is without merit. There is no provision in the banking law for an appraisal by a committee selected from the depositors. Under that law it is the duty of the superintendent to make an estimate, and to make such assessment, not exceeding 100 per cent., as in his opinion may be necessary to care for the claims of depositors. He has no authority to delegate his duty in this respect to others. It appears from the record that a 100 per cent. assessment was made after the purported appraisal had been made by the depositors' committee. The value of the assets of the bank which could probably have been converted into cash in twelve months is not alleged, and no witness testified as to what the value of such assets was. The depositors' committee did not place a separate value on that class of assets. While it appears that in the opinion of plaintiffs and other witnesses the assets of the bank purchased by Varn, exclusive of the stock assessments, were worth the amount at which they were appraised

by the committee, which is considerably more than Varn paid for them, no witness testified that the amount paid depositors could have been realized from the assets within one year, or in any other number of years. As a matter of fact, it appears from the record that the bank was closed on December 20, 1930, and the hearing at which the order excepted to was passed took place more than two years thereafter, to wit: December 24, 1932. When the superintendent of banks undertakes to make an assessment and fix the amount of the stockholders' liability, he is vested with a wide discretion; and unless the evidence in a particular case shows that his discretion was abused, the enforcement of the executions issued on the assessments should not be interfered with.

In *Butler* v. *Mobley,* supra, the necessity for, amount of, and correctness of the assessment and the execution issued thereon were denied by the affidavit of illegality; and it was alleged: "(1) A previous assessment of 42% was made by the superintendent of banks on stockholders in Morgan County Bank, and this was and is sufficient to pay all depositors of the bank in full. (2) The amount of assets now on hand is sufficient to pay all debts of the said bank, including all legal liabilities to depositors. (3) The executions issued on the first assessment of 42% have not been collected from other stockholders, and to now assess defendant an additional 33 1/3% is, in effect, an effort to force defendant to pay assessments due by the defaulting stockholders under the first 42% assessment. (4) The amounts due on the uncollected executions of the 42% assessment, with the assets on hand, is more than sufficient to discharge all indebtedness of the bank, including liability to depositors, and the superintendent of banks has not used due diligence to collect the first assessment, but has been negligent therein. (5) The purported assessment of December 17, 1926, was made ostensibly to pay the claims of two alleged depositors, to wit: (a) Lamar Poullain and (b) Mrs. Sallie Campbell, and (a) The claim of Lamar Poullain has been reduced to judgment and paid in full from assets of the bank. (b) The claim of Mrs. Sallie Campbell has been paid in part from the assets of the bank, and it is not necessary to levy any assessment on stockholders to pay the balance due thereon, there being sufficient assets in hand for that purpose. (c) Neither the claim of Lamar Poullain nor that of Mrs. Sallie Campbell are properly classified as claims of depositors, but they are

general judgment creditors only, who have no claim on stockholders or on the assessments made on stockholders, but should share with other general creditors in the assets of the bank." Evidence was submitted to support the allegations of this affidavit of illegality, and the judge directed a verdict in favor of the superintendent of banks, and this court affirmed the judgment. See also *Manley* v. *Mobley,* 174 *Ga.* 228 (162 S. E. 536), in which the right of the superintendent to enforce an execution issued against a stockholder was involved on practically the same grounds. The issues raised by the affidavit of illegality in this latter case were submitted to the judge, who rendered a judgment in favor of the superintendent and ordered the execution to proceed, and this court affirmed that judgment.

In construing the provision of the banking act, supra, as applicable to the case at bar, it must be borne in mind that at the time the superintendent applied for and procured the order authorizing the sale, the assessment had been made and executions had been issued against all of the stockholders except one. The claims of the depositors had not been paid. If there were ever any doubts as to whether the superintendent of banks had the right to sell and transfer the executions issued on an assessment, there can be no such doubt since the recent ruling of this court in *Touchstone* v. *Gormley,* 178 *Ga.* 130 (172 S. E. 335), which decision construes several sections of the banking act of 1919 and amendments thereto relating to the powers of the superintendent of banks. So we unhesitatingly hold that the trial judge correctly held that the superior court had the right to authorize the transfer of the stock-assessment executions to one who purchased them in pursuance of the court's order specifically authorizing the sale of such executions. In *Mobley* v. *Marlin,* supra, this question was not dealt with, for the reason, as already stated, that the court held that there had been no sale, but that merely an agency had been created designed to be substituted for the superintendent of banks in the performance of his duty in liquidating the bank, and that this could not be done. Under the ruling in *Touchstone* v. *Gormley,* if the superintendent of banks can enforce an execution issued upon a stock assessment for the purpose of raising money to pay depositors, there is no reason why he can not, with the permission of the court, sell the fi. fa. to raise money for the same purpose. See *Wilkins* v. *American Se-*

*curities Co.,* 40 *Ga. App.* 379 (4) (149 S. E. 810); *McCaskill* v. *Chattahoochee Fertilizer Co.,* 167 *Ga.* 802 (146 S. E. 830); Ga. L. 1925, pp. 119, 131, sec. 20, providing that a stockholder may by affidavit of illegality contest his liability for the assessment and the amount and *necessity* thereof. See also the very able discussion of a similar question by Judge Jenkins, in *Cosmopolitan Life Ins. Co.* v. *Sheets,* 20 *Ga. App.* 622 (4) (93 S. E. 507).

The petition contains the following allegation: "That the executions hereinbefore referred to were issued under and by virtue of the provisions of section 2366(71) of the 1926 Code of Georgia [Ga. L. 1919, p. 160; Ibid. 1925, p. 129], same being a section of the banking act of said State, and that the provisions of said section to which reference is made are void in that the same are violative of the due-process clause of the constitution of the State of Georgia and of the Federal constitution, as shown by article 1, section 1, paragraph 3, of the constitution of the State of Georgia, and amendments 5 and 14 of the constitution of the United States; and that therefore said executions are null and void." This allegation does not properly raise any constitutional question. *Crapp* v. *State,* 148 *Ga.* 150 (95 S. E. 993). However, it would seem from the decisions of this court in *Coffin* v. *Bennett,* 164 *Ga.* 350 (138 S. E. 670), and *Davidson* v. *Citizens Bank of Fort Valley,* 171 *Ga.* 81 (2) (154 S. E. 775), that there can be no question about the constitutionality of the statute as amended.

It is insisted by the plaintiffs that the stockholders of an insolvent bank occupy the position of sureties for the payment of the indebtedness of the bank to its depositors, and that indulgence of several stockholders of the bank against whom executions had been issued served to increase the risk or liability of plaintiffs as sureties, and thereby discharged them from the payment of the stock assessments. We are of the opinion that this contention is without merit. A stockholder in an insolvent bank, against whom an assessment execution is issued, does not occupy the position of a surety as to any other stockholder in the enforcement of this several liability. For this reason no indulgence which may be granted by a transferee of an execution against a defaulting stockholder in any way increases the risk of any other stockholder, or exposes him to greater liability. Art. 18, sec. 1, of the banking act (Ga. L. 1919, p. 189), as amended (Ga. L. 1925, p. 134), did not create the relationship

of principal and surety among the stockholders inter sese. In the statute the liability is fixed "equally and ratably, and not one for another."

It is alleged that the sale of the assets of the bank to Varn, and the transfer by him to Lee and Carter, are void, for the reason they were officers or directors of the bank. We can not concur in this conclusion. The sale to Varn was not made by the officers of the bank acting under authority from the stockholders or board of directors, but was made by the superintendent of banks acting for the depositors and creditors, and completed only by the sanction of a solemn order of court.

Other allegations of the petition will not be dealt with, for the reason there was no evidence to establish them. It does not appear that the learned trial judge omitted any act to give all parties interested full notice of the hearing on the application to sell the assets of the bank. In fact one of the plaintiffs testified that he saw the published notice, but did not object to the sale of the assets of the bank. No abuse of discretion appearing in the refusal of an injunction on conflicting evidence, the judgment is

*Affirmed. All the Justices concur.*