## RAILROAD COMMISSION OF GEORGIA *v.* MACON RAILWAY AND LIGHT COMPANY.

The Railroad Commission of Georgia has no express or implied statutory power to determine whether a chartered street-railroad company may entirely discontinue or abandon service upon a line, or part thereof, voluntarily constructed by it and devoted to the public use.

No. 2033.   MARCH 4, 1921.

Mandamus. Before Judge Bell. Fulton superior court. April 5, 1920.

*James K. Hines,* for plaintiff in error.

*John R. L. Smith, Grady C. Harris,* and *Wallace Miller,* contra.

*Hall, Grice & Bloch,* for persons at interest, not parties of record.

GEORGE, J. The Macon Railway and Light Company filed its petition with the Railroad Commission of Georgia, " asking permission to abandon service on the Rivoli Extension, between Lundy Road and the end of the line." From its petition it appears that the extension " was placed in service in September, 1912, and consists of 1.87 miles of single track, extending from Lundy Road, which is a point 4.04 miles from the center of the city of Macon

and 1.9 miles from the nearest point of the city of Macon to the end of the line." The reasons upon which the company based its application were fully set forth in the petition. The company prayed that the commission take jurisdiction of the matter, and, after final hearing, that the company be granted "the privilege of suspending service on this line." The commission held that it was without jurisdiction in the premises; and the company applied for a mandamus.to compel the commission to exercise its jurisdiction, to hear evidence on the merits of the application, and to determine whether or not the applicant should be allowed to discontinue service on said extension as prayed. The mandamus was granted, and the commission excepted.

The court will take cognizance that the Macon Consolidated Street Railroad Company was originally chartered by the Secretary of State. Its name was subsequently changed to the Macon Railway and Light Company. Civil Code (1910), § 5734; *Atlanta &c. R. Co.* v. *A., B. & A. R. Co.,* 124 *Ga.* 125 (52 S. E. 320). The question is whether the Railroad Commission of Georgia has jurisdiction to permit a street-railroad company chartered by the Secretary of State to discontinue service upon a line voluntarily constructed by it, and devoted to the public use. The powers of the commission are defined by our statutes. It is conceded that the power to permit a chartered street-railroad company to abandon altogether its duties to the public is not expressly conferred upon the railroad commission. Coming directly to the question presented by this record, it is also conceded that the power to permit a chartered street-railroad company to abandon or discontinue service to the public on a particular portion or part of its line is not expressly conferred upon the commission. Our statute provides that "the Railroad Commission shall have and exercise all the power and authority heretofore conferred upon it by law, and shall have the general supervision of all common carriers, . . street railroads . . within this State; . . and is authorized . . to require all common carriers and other public-service companies under their supervision to establish and maintain such public service and facilities as may be reasonable and just, either by general rules or by special orders in particular cases." Civil Code (1910), § 2663; Ga. Laws 1907, p. 75, sec. 6. The street-railway company contends, that the commission has power to determine whether it is reasonable and just

17

that it should be required to continue service upon the extension named, under given facts and circumstances, and taking into consideration the extent to which the particular extension is used by the public, the purpose for which it is used, the loss it entails upon the company, the extent to which that loss impairs the efficiency of more useful portions of the system, and all matters relevant to the general question; that the power of " general supervision " of the company, and the power " to require " the company under supervision " to maintain such public service and facilities as may be reasonable and just," not merely imply but include the power to determine what is reasonable and just and the power to not require such as is not reasonable and just; and that the commission has power to grant the privilege of suspending service on the particular extension permanently or for the present, if it concludes that reason and justice to the company and the public do not require the operation of it. It is argued that the commission has authority to determine what service is just and reasonable, and therefore to determine that a particular service is not just and not reasonable. It is to be noted, however, that the company does not seek merely to have it determined whether the service on the particular extension is just and reasonable, but it seeks the sanction of the commission to the discontinuance or abandonment of the service on the particular extension. In the view we take of the matter, the question involves the power and jurisdiction of the commission to determine the extent of the legal obligation resting upon the company under its charter. Since the commission has no express power under our statutes to permit the abandonment of service upon a particular line voluntarily constructed by it and devoted to the use of the public, the power to permit such abandonment can not be implied. The implied powers of the commission are such as are reasonably necessary to execute the powers expressly conferred upon it. It may be true that the power of the commission (if such power be conceded) to permit the company to abandon service upon a particular line, or portion thereof, can not be held to confer the power upon the commission to permit the company to abandon all service and the discharge of all duties to the public, if the rendering of such service becomes unreasonable and unjust. But where can the line be drawn? The power to permit a street-railroad company to discontinue or abandon service upon a particular line or upon a particular part of its system is so ex-

traordinary as to preclude the idea that the General Assembly would have left such power to implication merely. It is more reasonable to assume that the General Assembly would have given such power in express terms. The power of the commission to *reduce* service and facilities, short of actual suspension of all service, can not be questioned; but, as we have indicated, the power to *reduce* service and facilities is quite different from the power to determine the extent of the legal obligation resting upon the company under its charter. The distinction must be borne in mind, although the commission is asked to permit the discontinuance or abandonment of service upon ever so short a portion of its system. While the commission has power, under our statute (Civil Code (1910), § 2664), to permit a carrier to remove spur-tracks and side-tracks, it must not be left out of view that the maintenance of a particular spur-track or side-track is merely one of the incidents of service, and that the power to dispense with one incident of service merely does not imply or include the power to discontinue the whole, even on a portion of the carrier's line.

The conclusion here reached is in harmony with the ruling of the New York Public Service Commission (1st Dist.) in Re Long Island R. Co., P. U. R. 1919E, 275. See also Re Lake Erie &c. Ry. Co. (Ohio Pub. Util. Com.), P. U. R. 1916F, 553, and Re Eastern Wisconsin Elec. Co. (Wis. Com.), P. U. R. 1918E, 748. It is conceded that the foregoing rulings were based upon facts different from the facts here involved. It is also true that a majority of the commissions of other States, have held that the power of general supervision and the power to regulate service necessarily include and imply the power to permit public utilities to abandon service. The same has been held by the courts of last resort in some of the States. See Railroad Commission v. Kansas City. So. R. Co., 111 La. 139 (35 So. 487) ; State ex rel. Tate v. Brooks-Scanlon Co., 143 La. 539 (78 So. 847) ; Brooks-Scanlon Co. v. Railroad Commission, 144 La. 1086 (81 So. 727), P. U. R. 1919E, 33; People ex rel. Hubbard v. Colo. Title &c. Co., 65 Colo. 472 (178 Pac. 6, P. U. R. 1919A, 542; In Re Tremont & Gulf Ry. Co. (La. Com.), P. U. R. 1915A, 457; Culver v. St. Joseph &c. Ry. Co. (Mo. Com.), P. U. R. 1917B, 542; In Re Parkville Oil & Gas Co. (Mo. Com.), P. U. R. 1919A, 502; Oswayo Chemical Co. v. N. Y. &c. Ry. Co. (Pa. Com.), P. U. R. 1919C, 690; Caster v. Kansas Postal-Telegraph

Co., 96 Kan. 298 (150 Pac. 544) P. U. R. 1915E, 222; Re Tide-water &c. R. Co. (Va. Com.), P. U. R. 1917E, 798; Re Belt Line Ry. Corp. (N. Y. Com.), P. U. R. 1919D, 56 (express power as to street railroads conferred by statute); Re Grand River Gas Co. (Okla. Com.), P. U. R. 1917C, 1032, 1044; Re Emigration Canyon R. Co. (Utah Com.), P. U. R. 1917F, 464. Other commissions have acted upon the assumption of power in this particular, the question not being expressly raised. See Re Fairview Transporta-tion Co. (Ill. Com.), P. U. R. 1917E, 44; Re Chicago &c. Ry. Co. (Minn. Com.), P. U. R. 1919B, 704; Re Exeter &c. Ry. (N. H. Com.), P. U. R. 1919B, 251; Re Sandpoint &c. R. Co. (Idaho Com.), P. U. R. 1916F, 1077; Smith v. Atlantic So. R. Co. (Iowa Com.), P. U. R. 1915F, 125; Re Charleston &c. Co. (W. Va. Com.), P. U. R. 1916F, 338; Day v. Tacoma Ry. &c. Co. (Wash. Com.), P. U. R. 1915C, 593; Re Coburn Steamboat Co. (Me. Com.), P. U. R. 1915C, 71; Re Lockland &c. Ry. Co. (Mo. Com.), P. U. R. 1918E, 677. In view of what we have said, however, it follows that the court erred in making the mandamus absolute.

*Judgment reversed. All the Justices concur.*