SHROPSHIRE *et al.* v. KINSEY *et al.*

No. 6476.    FEBRUARY 13, 1929.

*M. B. Eubanks* and *Graham Wright,* for plaintiffs.
*Willingham, Wright & Covington,* for defendants.

BECK, P. J.    Mrs. Hill Shropshire and Mrs. J. E. Manning brought a petition against the National City Bank of Rome and A. L. Kinsey, praying for injunction to restrain the defendants from committing waste by cutting and destroying the timber on the lands described in the petition, alleging that they were children of D. C. Fowler, deceased; that their father died testate, leaving a will which was duly probated, a copy being exhibited; that under this will, as petitioners contend, the widow, who was named as executrix, took only a life-estate in the lands, subject to be sold only for her support and comfort, if it became necessary for that purpose, and at her death the children of the testator were to receive the lands or the proceeds from the sale of them; that after the probate of the will and qualification of the executrix, she, in order to secure debts created by Fowler Brothers, with which she had nothing to do and from which she received no consideration, signed the deeds to secure debts; that all three deeds were executed the same day, and were identical, with the exception of the amounts and the

names of the grantees; and that the giving of these deeds was in no way necessary for the support or comfort of the widow, and she did not receive any consideration for signing them. These deeds were signed by Jay and Charles Fowler, and by Mrs. Fowler as an individual and as executrix of the will of D. C. Fowler, deceased. In the original petition it was alleged that the debts which these deeds were executed to secure were contracted before the death of D. C. Fowler, but by amendment this was stricken, and the allegation made to read that the debts were created after the death of the testator. The deeds were all finally transferred to the National City Bank, and this bank advertised the property under the power of sale included in the deeds and became the purchaser at such sale; and just prior to the institution of this action the bank contracted with defendant Kinsey to cut and saw and dispose of all the timber suitable for sawing into lumber, and at the time the suit was brought he had begun cutting the timber. The plaintiffs alleged that the acts of the defendants constituted waste that entitled them to maintain this action.

Defendants filed a demurrer, which the court sustained, and dismissed the petition. The plaintiffs excepted.

Petitioners are children and heirs at law of D. C. Fowler, formerly a resident of Chattooga County, Georgia. He died testate in March, 1921, leaving as his heirs at law petitioners and several other children, all of whom are living. His will was duly probated in the court of ordinary of Chattooga County. At the time of his death he was seized and possessed of a large and valuable tract of land. In the first item of his will he directs that his debts be paid, etc. In the second item he gives his wife $300 year's support out of any money which may come into her hands from his estate, and in addition thereto all of his household and kitchen furniture. The next two items are as follows:

"Item third. In lieu of dower, homestead, or other provision which may be made by law, I will, devise, and bequeath unto my beloved wife, Matilda Fowler, my entire estate for and during her natural life, be the same real estate, personal property, notes, accounts, choses in action, interests, and inheritances, and that she take immediate and full possesion of same upon my death, in as full and complete manner as did I in my lifetime possess and control same, without appraisement, order of court, or other formal-

ity, the only legal requirement of her being to probate this will. I am interested as copartner in a general mercantile business with my two sons, Jay Fowler and Charlie Fowler, at Subligna, Ga. I direct my wife to continue this business as a partner for a term of ten years after my death; and in the event of her death before the expiration thereof, I direct the representatives of my business to give my said two sons two years after my wife's death to wind up and settle the partnership, as I desire to give them ample time without injury to wind up the business. I am a joint owner with my said son, Charlie Fowler, in a certain farm in said State and county. I direct my wife to do what is necessary to carry on this joint ownership as long as she may desire. I give my said wife full power and authority, without order of court or other requirement, to make all contracts and perform the same growing out of same partnership, and to continue the same, or in reference to any other property or interest which I may own. She may sell at private sale or public, as she may deem best. I direct my wife to put to her own use all rents and profits derived from my estate, that if possible she preserve the corpus; but in the event it should become necessary for her comfort, she may use any part of said estate.

"Item fourth. On the death of my wife, whatever remains of my estate I direct sold, all interest converted into money and divided equally between my children who are in life; and in case of their death or any one of them, their share shall be paid to their children, if any; and if none, to their lawful heirs."

The petitioners insist that by the terms of the will the widow, who was also executrix, "became entitled to a life-estate only in said land, and was by the terms of the will required to preserve the corpus of the estate, which could only be sold by her for her necessary support and comfort; that under the terms of said will, at the death of said widow and life-tenant, the children of said D. C. Fowler who are then living, and the children of any that may die before the death of said widow, will be entitled to receive all of the corpus of said estate, consisting now of the lands hereinbefore described, and to have the same sold and divided as provided by item four of said will." If these contentions were in accordance with the true construction of the will, the court erred in sustaining the general demurrer. But we do not agree with petitioners

in their construction as just set forth. We are of the opinion, that, giving to all parts of Item 3 of the will their due force, the widow was authorized to execute the deed containing the power of sale under which the land was subsequently sold. The petition does not allege that these deeds were not executed to secure the debts created in connection with the business which she was expressly authorized to carry on after she became executrix. In item 3 the testator expressly declared, after giving to his wife a life-estate in his property, that she should take immediate possession of it upon his death, in as full and complete a manner as he possessed it; and that she was to take possession "without appraisement, order of court, or other formality, the only legal requirement of her being to probate the will." And then, after a reference to his interest as a partner in a mercantile business with his two sons, Jay Fowler and Charlie Fowler, this item continues in this language: "I direct my wife to continue this business as a partner for a term of ten years after my death; and in the event of her death before the expiration thereof I direct the representatives of my business to give my said two sons two years after my wife's death to wind up and settle the partnership, as I desire to give them ample time without injury to wind up the business. I am a joint owner with my said son, Charlie Fowler, in a certain farm in said State and county. I direct my wife to do what is necessary to carry on this joint ownership as long as she may desire. I give my said wife full power and authority, without order of court or other requirement, to make all contracts and perform the same growing out of same partnership, and to continue the same, or in reference to any other property or interest which I may own. She may sell at private sale or public, as she may deem best. I direct my wife to put to her own use all rents and profits derived from my estate, that if possible she preserve the corpus; but in the event it should become necessary for her comfort, she may use any part of said estate." This broad language would have authorized the executrix to put money into the business of the copartnership referred to, and to contract for the payment of debts incurred while she was carrying on the copartnership, and for other purposes; and it is not alleged that these debts were not created for any of these purposes which we have indicated as being within the purview of the powers conferred. And that being true, the executrix was authorized to

sell the property in question for the payment of the debts incurred.

Counsel for plaintiffs in their brief quote the following from the decision in *McMillan* v. *Cox,* 109 *Ga.* 42 (34 S. E. 341): "When by the terms of a will real and personal property is given to the wife for life, with remainder to the children of the testator, a power conferred on the executrix, who was the wife of the testator, to sell any or all of the property devised and reinvest the proceeds, expressed in language which plainly and unequivocally limits the purpose for which any sale can be made to that of reinvestment only, does not, notwithstanding the will may contain broad and liberal provisions as to the manner in which this power may be exercised, empower the executrix to mortgage the property devised, nor to convey the title of such property as security for a debt created by her." We do not think that the quoted ruling supports the construction of the will insisted upon by counsel for plaintiffs. The will under consideration in *McMillan* v. *Cox* by its terms limited the purpose for which a sale could be made of the property "to that of reinvestment only." The broad and liberal provisions as to the manner in which the power of sale might be exercised did not empower the executrix to mortgage the property devised, or to convey the title of such property, as this court said in that case, "as security for a debt created by her." But in the will now under consideration the wife was given full power and authority, without order of court, "to make all contracts and perform the same, growing out of same partnership and to continue the same, or in reference to any other property or interest which I may own. She may sell at private sale or public, as she may deem best." The will giving her the power to carry on the business and to make contracts and incur debts necessary in the business, it will be inferred that the debts which she did contract, and to secure which she conveyed the property were within the powers with which she was clothed under the terms of the will, in the absence of any allegation to negative this legitimate inference. The language, "I direct my wife to put to her own use all rents and profits derived from my estate, that if possible she preserve the corpus; but in the event it should become necessary for her comfort, she may use any part of said estate," does not limit the power given to carry on the business and make contracts in connection therewith.

Counsel for plaintiffs also quote from the cases of *Glore* v.

**38**

*Scoggins,* 124 *Ga.* 922 (53 S. E. 690), *Harris* v. *Woodard,* 133 *Ga.* 104 (65 S. E. 250), *O'Kelly* v. *McGinnis,* 141 *Ga.* 379 (81 S. E. 197), and *Putney* v. *Bryan,* 142 *Ga.* 118 (82 S. E. 519). A reading of these decisions will show that there is a clear and patent difference in the facts of those cases from those involved here. We think that upon the controlling issue in this case the ruling in *Ferris* v. *Van Ingen,* 110 *Ga.* 102 (35 S. E. 347), is applicable. There the following language was used: "Generally every partnership is dissolved by the death of one of the partners, where the partnership articles do not stipulate otherwise; yet any partner may by his will provide for the continuance of the partnership after his death, and in making this provision he may bind his whole estate, if the language of the will is clear and unambiguous that he intends to make his general assets liable for all debts contracted in continuing the trade after his death." See 24 C. J. 58; *Wiggs* v. *Hendricks,* 147 *Ga.* 444 (94 S. E. 556).

It follows that the court did not err in sustaining the general demurrer and dismissing the petition.

*Judgment affirmed. All the Justices concur.*