Hillsborough,
Nov. 7, 1933.

WILLARD D. RAND, *Bank Commissioner,*
*v.*
MERRIMACK RIVER SAVINGS BANK.

*McLane, Davis & Carleton (Mr. Carleton* orally), for the plaintiff.

MARBLE, J. The power of the superior court to grant the plaintiff's petition depends in part upon whether the bank commissioner in wind-

ing up the affairs of an insolvent bank under the provisions of P. L., *c.* 268, is an officer of that court or an administrative official whose acts are exempt from judicial control except in enumerated instances. If his position is essentially that of a receiver, he is subject to the orders of a court of equity (*Rockwell* v. *Dow*, 85 N. H. 58, 68; *Eastman* v. *Bank*, 58 N. H. 421), and the superior court in the exercise of its chancery powers may authorize him to borrow money, provided the object of the loan is "to preserve the receivership property from waste, damage, or loss." 1 Tardy's Smith on Receivers (2d *ed.*), *s.* 45.

Chapter 268 of the Public Laws does not provide for all the contingencies of liquidation. *United States* v. *Company*, 85 N. H. 118. This was equally true of chapter 162 of the Public Statutes which it supersedes. *Bank Commissioners* v. *Company*, 69 N. H. 621, 623; *Bank Commissioners* v. *Company*, 70 N. H. 536. The insolvency act (P. L., *c.* 401) and the statute governing the liquidation of banks have always been construed together to form a complete system of insolvency law. *United States* v. *Company*, 85 N. H. 118, 119, and cases cited. Where the latter has been incomplete the courts have invariably looked to the former to supply the deficiency.

Under G. L., *c.* 166, *s.* 13 (P. S., *c.* 162, *s.* 15), the liquidating agent or assignee, so called, who was appointed by the court on application of the bank commissioners, was held to be "an officer of the court, subject to its order and direction." *Brown* v. *Folsom*, 62 N. H. 527, 528. Such judicial supervision was an essential element in the "completeness" of the insolvency system.

After the passage of Laws 1911, *c.* 68, the court no longer had the power to appoint an assignee, but, on petition of the commissioners representing that the assets of a bank under their supervision were reduced in value below ninety per cent of the amount due its depositors, a justice of the superior court was authorized to direct the commissioners themselves to take possession, as liquidators, of the property and business of the institution. It is true that certain independent authority was conferred upon the commissioners by this statute, just as like authority had been conferred upon the assignee, but this authority related mainly to matters of routine; such, for example, as the making of inventories, the giving of notice, the appointing of agents, and the collection of accounts. In all matters of settlement and disbursement—the selling of property, the compounding of bad or doubtful debts, the fixing of agents' compensation, the allowance of disputed claims, and the payment of dividends—the approval of the court was necessary.

The amendment of 1915 (*c.* 97) provided for the issuance of injunctions in certain cases and authorized the presiding justice to direct the commissioners, on their own petition, to take possession of a bank if in his opinion the public good so required. The present statute does not differ from that of 1911, as amended by the act of 1915, except that the three commissioners have been succeeded by a commissioner and deputy commissioner (P. L., *c.* 259), the court being now required to designate the commissioner as the liquidating official. P. L., *c.* 268, *ss.* 2, 4.

Of this statute it has been said that the commissioner thereunder "merely initiates the proceedings, leaving the remainder of the process to be carried out by the court." 41 Yale Law Journal, 1253. This is doubly true if, as indicated in *United States* v. *Company*, 85 N. H. 118, 120, the statute is to be construed in the light of the earlier enactments.

The banking statutes of most states "are impressively similar" (81 U. Pa. Law Rev. 80), and each falls within one of two classes, (1) those in which the liquidating officer takes over the insolvent bank by legislative mandate, and (2) those in which he takes control by judicial decree.

In the case of *In re Cashmere State Bank*, 169 Wash. 258, the liquidator is held to be subject to judicial control, even though the statute there construed falls within the first group.

Our own statute belongs to the second class. The commissioner does not assume control of an insolvent bank by virtue of his authority as commissioner but must first be directed "to take possession of the property and business of such institution" by a justice of the superior court. P. L., *c.* 268, *s.* 4. "He does not get authority to act from the statute, but from his appointment by the court. He is not a statutory successor of the insolvent institution." *Maryland Casualty Co.* v. *McConnell*, 148 Tenn. 656, 663.

"When the court appoints a receiver to hold the property of a corporation, the court itself assumes the administration of the estate. The possession of the receiver is the possession of the court, and the court holds and administers the estate through the receiver." *Clifford* v. *Company*, 103 Vt. 229, 241.

There is nothing in chapter 268 to indicate a legislative intent to abrogate this rule and make the custody of the superior court merely nominal. If the presiding justice finds that the bank has been aggrieved by the decree of liquidation, he may, under section 25, order the commissioner to surrender the property.

The provisions of the act point plainly to the conclusion "that the liquidator was intended to be subject to the equity jurisdiction of a court." 46 Harv. Law Rev. 500, note 19. The banking statutes of

Connecticut and Iowa have been similarly interpreted. *Bassett* v. *Company*, 115 Conn. 530; *Andrew* v. *Bank*, 214 Ia. 1337. The same conclusion is reached in *Blades* v. *Hood*, 203 N. C. 56, under a statute providing that the provisions of the corporate receivership law not inconsistent with the banking act shall apply to the liquidation of insolvent banks—a situation somewhat analogous to the "complete system of insolvency law" which prevails in this jurisdiction.

The cases of *Riches* v. *Hadlock*, 80 Utah 265, and *State* v. *District Court*, 45 Wyo. 29, are distinguishable. Under the Utah statute "the commissioner takes possession and holds it without the aid of, and despite, judicial action." *Riches* v. *Hadlock, supra*, 275. The Wyoming statute goes even further. It vests the state examiner with full power not only "to take possession of the insolvent bank" but to "put a stop to all court receivership proceedings relative to it." *State* v. *District Court, supra*, 53.

The rule that the affairs of a bank should be liquidated "with the minimum loss of time and at the least possible expense" (*In re Union Bank of Brooklyn*, 161 N. Y. Supp. 29, 43) is of course a relative one and does not always call for an immediate sale of the bank's property. It is understood that no rights except those of the depositors are here involved; that because of prevailing business conditions the notes and mortgages in the commissioner's hands cannot be sold without great sacrifice, and that the depositors, as "stockholders" of the bank (*Hall* v. *Paris*, 59 N. H. 71, 73), are to receive the entire proceeds of the loan. On these facts, no question concerning the displacement of existing liens can arise. See *Hale* v. *Railroad*, 60 N. H. 333, 341.

Power to permit a receiver to borrow money is implied from the inherent right of a court of equity to preserve the receivership property from loss or destruction. The controversies which usually arise on this subject are not primarily concerned with the question of what constitutes preservation from loss or destruction but with the power of the court to make the new indebtedness a paramount lien. It is the general rule that where the security pledged is subject to all prior encumbrances, or where (as here) no prior encumbrances exist, the court may, in the exercise of discretion, authorize a receiver to borrow funds for the purpose of continuing the business temporarily, if that is "the most practical way of preserving the value of the property." 2 Tardy's Smith on Receivers (2d *ed.*), s. 555. To the same effect, see *In re Holmes Mfg. Co.*, 19 Fed. Rep. (2d) 239; *Cox* v. *Snow*, 47 Ida. 229; *Sibley County Bank* v. *Company*, 161 Minn. 360, 362, 363; *Clifford* v. *Company*, 103 Vt., 229, 239, 240.

"Borrowing by a bank receiver to pay dividends, pending a better opportunity to liquidate the assets, may well be justified on this analogy." 46 Harv. Law Rev. 502. The analogy fails, however, if the real purpose of the loan is not conservation of the property; that is to say, unless the loan approximates the present value of the assets and there is a reasonable expectation that the property can later be sold for a higher price.

Section 19 of chapter 268 provides that the court may authorize the commissioner to declare one or more dividends after payment of expenses. The provisions of section 29 are as follows: "The proceeds of the property of an insolvent institution shall be distributed according to the decree of the court: I. To pay the expense of the liquidation. II. For the payment in equal proportion of all debts, claims and obligations owing by the institution. III. The remainder to be divided among the stockholders according to their interests."

Reasonably interpreted, these provisions do not mean that all the expenses of liquidation must be paid in full before the declaration of a preliminary dividend. To hold otherwise would, as a practical matter, prevent the payment of any dividend except the final one, and thus negative the authority expressly granted by section 19.

While it is the commissioner's duty to obtain the highest possible price for the property under the circumstances, one of the circumstances to be considered is the fact that savings banks are especially designed to promote the prosperity of persons of small means whose funds should be readily available. Proper regard for this circumstance might, under ordinary conditions, require the commissioner to hasten liquidation even at some sacrifice of values. But if such sacrifice can be avoided in the present case by satisfying the immediacy of the depositors' demands through a loan understood to equal approximately all that could be obtained by a forced sale of the assets, so that there will be a later dividend not otherwise obtainable, the loan may fairly be said to preserve the value of the property.

The acceptance of federal benefits for the regulation, conservation, and reorganization of banks is expressly authorized by Laws 1933, c. 114, s. 10. The contemplated loan appears therefore to be in accord with the declared policy of the state.

The superior court has the power to grant the plaintiff's petition.

*Case discharged.*

All concurred.