**130**

TOUCHSTONE *v.* GORMLEY, superintendent of banks, *et al.*

No. 10069.   DECEMBER 29, 1933.

*Maddox & Futral,* for plaintiff.

*D. M. Parker, assistant attorney-general,* and *Beck, Goodrich & Beck,* for defendants.

BELL, J.   Griffin Banking Company being insolvent and in the possession of R. E. Gormley as superintendent of banks for the purpose of liquidation, the superintendent applied to the judge of the superior court of Spalding County for an order authorizing him to obtain a loan from the Reconstruction Finance Corporation to aid in the liquidation of such bank, and to pledge the assets of the bank as security for such loan.   Upon the grant of the application by the judge of the superior court, Touchstone, a stockholder and a creditor of the bank, filed a suit against Gormley in his official capacity, to enjoin the obtaining of such loan, on the sole ground that the superintendent of banks had no authority to contract for such loan or to pledge the assets to secure the same.   An interlocutory injunction was denied, and Touchstone excepted.

The petition, together with the exhibits attached thereto, disclosed the following facts:   Griffin Banking Company failed and went into the hands of the superintendent of banks for liquidation, on March 23, 1933, with liabilities amounting to about $1,600,000. According to an appraisement made by or at the instance of the superintendent of banks, the value of the assets was about $780,000.

The superintendent has applied to the Reconstruction Finance Corporation to obtain a loan upon the assets of Griffin Banking Company in accordance with the acts of Congress governing the powers and activities of the Reconstruction Finance Corporation, and such corporation "has designated and appointed a committee to appraise the assets of Griffin Banking Company, pursuant to said application, and said appraisers have completed their appraisal and reported the value of said assets for the purposes of said loan as $961,694.78." In his application filed by the superintendent with the judge of the superior court, seeking approval of his intention to obtain such loan and to pledge the assets of Griffin Banking Company as security therefor, he represented that he was advised and believed that he could procure a loan in the sum of $865,000, which is about 90 per cent. of the value of the assets according to the appraisal made by the committee appointed by the Reconstruction Finance Corporation for that purpose; and that unless the superintendent of banks is restrained and enjoined from so doing, he will contract for such loan and will pledge the assets of Griffin Banking Company as security therefor. "The Reconstruction Finance Corporation will make said loan, and has agreed to do so." The petition further alleged that the action proposed by the superintendent of banks is ultra vires and beyond the scope of his duties or powers, and is not authorized under the provisions of the banking laws of this State or any amendment thereto. The consummation of such a contract would be a fraud upon the rights of stockholders and creditors of Griffin Banking Company, including the plaintiff, and will result in irreparable damage to petitioner and other stockholders and creditors of the bank. The petitioner is remediless, and can only protect and enforce his rights in a court of equity by the writ of injunction. He prayed that the superintendent be restrained and enjoined from contracting with the Reconstruction Finance Corporation for said loan, or any loan, in behalf of Griffin Banking Company, and from pledging the assets of such bank to secure any such loan or loans.

The petition further showed, by an exhibit, certain terms and conditions to be included in the proposed contract between the superintendent of banks and the Reconstruction Finance Corporation, some of which were as follows: The rate of interest to be paid is 4-1/2 per cent. per annum, payable semi-annually, and the note to

be executed by the superintendent will exist as an obligation for which only the assets of the bank will be liable, individual liability of the superintendent being expressly excluded. After the assets are pledged, they may be forwarded back to the superintendent upon trust receipt for collection, under arrangement satisfactory to the corporation. The superintendent agrees to give bond in favor of the corporation, in form and in amount and with sureties satisfactory to it, conditioned upon a faithful accounting by him for all of the assets in his trust, and "further conditioned upon the faithful performance of the duties of the [superintendent] as receiver or liquidating agent." Other terms and conditions of the loan contract need not be stated.

The superintendent of banks in his answer admitted the allegations of fact contained in the petition, but denied that he was without authority of law to obtain the loan and to pledge the assets as security therefor, as claimed by the plaintiff. By way of additional response the superintendent alleged: The assets of Griffin Banking Company consist largely of "frozen assets," which can not be liquidated at once, and in order to realize anything like their appraised value it will be necessary to continue the liquidation through several years. Unless the defendant is permitted to secure advances from the Reconstruction Finance Corporation as proposed, depositors and creditors of the insolvent bank will be delayed in the collection of their claims for a period of years. In his application to the judge of the superior court, which preceded the filing of the petition for injunction, and a copy of which is attached thereto as an exhibit, it was stated by the superintendent that "it is to the best interests of the creditors of said bank, and in order to secure a fair value for said assets, that a loan be procured thereon and the liquidation continued through a considerable period of time." This statement was not denied in the plaintiff's petition.

At the interlocutory hearing the case was submitted to the judge of the superior court upon "the verified petition of the plaintiff" and "the verified answer of the defendant," no demurrer having been filed.

Section 7 of article 7 of the banking act of 1919 (Ga. L. 1919, p. 135), is as follows: "Upon taking possession of the assets and business of any bank, the superintendent is authorized to collect all moneys due to such bank, and to do such other acts as are neces-

sary to conserve its assets and business, and shall proceed to liquidate the affairs thereof, as hereinafter provided. The superintendent shall collect all debts due and claims belonging to such bank, and by making application to the superior court of the county in which such bank is located, or to the judge thereof if said superior court be not then in session, may procure an order to sell, compromise or compound any bad or doubtful debt or claim, and on like order the superintendent may sell the real and personal property of such bank on such terms as the court, or the judge thereof, shall direct, but on any such court proceedings the bank shall be made a party by a proper notice issued from the court, and the hearing of any such application or petition by the superintendent may be had at any time, either in term or vacation, after the bank has had five days notice of such application." By the amendment of August 21, 1922 (Ga. L. 1922, p. 65), a new section was added to be known as section 7-A, which contains the following provisions: "For the purpose of executing any of the powers and performing any of the duties hereby conferred upon him, the superintendent may, in the name of the bank, institute, prosecute and defend any and all actions, suits and legal proceedings, including suits against its directors or officers, or any of them, upon any cause of action which is vested by law in such bank or in the stockholders or creditors thereof. He may, in the name of the bank, execute and deliver any and all deeds, assignments, bills of sale, transfers, satisfactions, or other instruments necessary or proper to effectuate any sale, lease, or transfer of real or personal property, or to carry into effect any power conferred or duty imposed upon him by this act or by any order of the superior court."

Under the broad provisions of these statutes, the superintendent of banks is impliedly granted, subject to the concurrence and approval of the judge of the superior court, the power in his discretion to borrow money for the use of an insolvent bank in his possession, and to pledge as security therefor all or any part of the assets of such bank, where to do so would aid in the advantageous liquidation of the affairs of such bank. It is true that the banking laws of this State contain no provision expressly granting such authority; but as to a bank which is hopelessly insolvent so that it can not be permitted to resume business, it is the duty of the superintendent to proceed with liquidation, and the liquidation must

be executed to the best advantage. This is the gist of the banking laws so far as they apply to the administration of insolvent banks, the entire law upon the subject amounting to a specific legislative instruction to accomplish that result. Many details and important acts necessary to the attainment of such result had to be entrusted to the judgment and discretion of the superintendent, since the legislature could not possibly have foreseen every situation that might confront that officer in the discharge of his duty, and it was *therefore* provided that he should "do such other acts as are necessary to conserve [the] assets and business" of the insolvent bank, and execute in the name of the bank any and all instruments "necessary or proper . . to carry into effect any power conferred or duty imposed upon him [by the banking act] or by any order of the superior court." This general grant of authority will include any and all acts which are reasonably necessary to execute the powers expressly conferred. *Born* v. *Simmons,* 111 *Ga.* 869 (36 S. E. 956) ; *Railroad Commission* v. *Macon Railway & Light Co.,* 151 *Ga.* 256, 258 (106 S. E. 282). Whether or not the superintendent should be considered as a general agent or as a special agent of the State for the purpose of liquidating insolvent banks, "the authority in both cases must be construed to include all necessary and usual means for effectually executing it." *Bass Dry Goods Co.* v. *Granite City Mfg. Co.,* 119 *Ga.* 124, 126 (45 S. E. 980) ; *New York Life Ins. Co.* v. *Smith,* 39 *Ga. App.* 160 (147 S. E. 126). While the members of the lawmaking body may have had no conscious intention to authorize the borrowing of money upon a pledge of the assets of an insolvent bank, yet, as we have stated above, it was impossible for them to have anticipated every particular act which the superintendent might have occasion to perform; and if the execution of the specific duty to liquidate the affairs of the bank to the best advantage should require the obtaining of such a loan, the authority to negotiate it is necessarily implied, being included with the power expressly conferred. In *Shropshire* v. *Kinsey,* 168 *Ga.* 32 (147 S. E. 41), it was held that an executor with power under a will to continue a certain business for a term of ten years could borrow money for the purpose of carrying on such business. See also, in this connection, *Wayne* v. *Myddleton,* 2 *Ga.* 383, 404; *Adams* v. *Rome,* 59 *Ga.* 765; *McMillan* v. *Cox,* 109 *Ga.* 42 (34 S. E. 341). The rulings just made are in accord with the

decision in *Exchange Bank* v. *Thrower*, 118 *Ga.* 433 (45 S. E. 316), where it was said: "Authority to borrow money is among the most dangerous powers which a principal can confer upon an agent. Whoever lends to one claiming the right to make or indorse negotiable paper in the name of another does so in the face of all the danger signals of business. He need not lend or discount until assured beyond doubt that the principal has in fact appointed an agent who by the stroke of a pen may wipe out his present fortune and bind his future earnings. The very nature of the act is a warning; and if the lender parts with his money, he does so at his own peril. If the power was not in fact conferred, he must bear the loss occasioned by his own folly. A power so perilous is not to be implied from acts which in other matters less hazardous might create an agency. It must be conferred in express terms, or be necessarily and inevitably inferable from the very nature of the agency actually created. So strict is the rule that it will not be presumed even from an appointment of one as general agent, unless the character of the business or the duties of the agent are of such a nature that he was bound to borrow in order to carry out his instructions and the duties of the office." Since the law enjoins upon the superintendent of banks the specific duty of bringing about the most efficient and advantageous liquidation that it is reasonably possible to accomplish, it may be said, in the language of the *Thrower* case, that the power to borrow money is necessarily to be inferred from the very nature of the agency expressly created, provided in the circumstances of a given case the beneficial liquidation required by law can not be otherwise effectuated.

Certain provisions of the banking laws, stating the time within which stated acts must be performed, tend to show that an expeditious liquidation was expected (Ga. L. 1919, p. 135, art. 7, §§ 12, 13, 15, 20) ; but no particular time limit for completing liquidation is actually prescribed, and the provisions just referred to are not conclusive. We can not attribute to the General Assembly the indiscretion of putting haste above prudence, and we think that if necessary the superintendent should extend the liquidation through such period of time as would prevent the sacrifice of assets and conserve the interests of all concerned. Thus, it is no absolute objection that the Reconstruction Finance Corporation is authorized by the acts of Congress to make loans for a period of not exceed-

ing three years and to renew the same from time to time for a period of five years from the original date, and that the superintendent may negotiate a loan and obtain the full advantage of these conditions. 47 Stat. 714, c. 520, §§ 202, 203, 211; 48 Stat. 141, c. 72. It is unnecessary to make further reference to the acts of Congress under which the Reconstruction Finance Corporation is operating, except to state that from that standpoint the transaction under consideration appears to be in accordance with Federal law. Otherwise, the acts of Congress would seem to be irrelevant, since the powers of the superintendent of banks as granted by the Georgia laws can not be enlarged or extended by an act of Congress with respect to the question here under consideration.

It does not appear that the terms and conditions of the loan and the requirements to be met by the superintendent will necessitate the surrender of any powers conferred upon that officer by the laws of this State (as was held to have been done, in *Mobley* v. *Marlin,* 166 *Ga.* 820, 144 S. E. 747), or restrict him in the performance of any duty resting upon him as a public officer. On first impression this conclusion might seem to be incorrect, in view of the facts that after pledging the assets the superintendent can not further deal with them except upon such terms as may be stated by the pledgee, and may be required to give bond to account to the pledgee for collections made. The former condition, however, is a necessary incident of every pledge, while the latter is not unusual in a trust agreement. It is not assumed that the Reconstruction Finance Corporation will be unreasonable in any matter relating to the bond. If any unreasonable demand should be made, the superintendent could withdraw. Accordingly, the authority to meet these requirements even at some expense will find place in the greater power to obtain the loan and to make the pledge. The fact that the bond may include a condition that the superintendent will faithfully discharge his duties as liquidating agent can hurt no one, although he is already under bond to the State of Georgia upon substantially the same condition.

Under the facts of this case it appears that the assets of the bank have been valued by the Reconstruction Finance Corporation at about $961,000; and that under the liberal policy of the Reconstruction Finance Corporation, which is seeking as a governmental agency to promote national recovery, the superintendent may ob-

tain a loan somewhat in excess of his own appraisal of the assets, which appraisal was made, of course, in view of the very conditions which the Government is now attempting to relieve. By obtaining this loan the superintendent will be enabled to realize something like the present value of the assets for immediate distribution to creditors, and at the same time will gain any possible advantage that may result from extending the liquidation through a period of years, as by an improvement in financial conditions with enhancement in values. If the amount which is finally derived from the assets should exceed the amount of the loan, the excess will naturally be added to the insolvent estate, and will inure to the benefit of creditors.

Since the record discloses nothing which can be seized upon as an absolute legal ground of objection, it does not appear that the superintendent would exceed or abuse his discretion in proceeding to negotiate the loan and to pledge the assets therefor, as contemplated, the proposed transaction having been approved by the judge of the superior court upon application duly made. So long as the superintendent does not exceed or abuse his discretion in such a matter, his action when approved by the judge of the superior court in an administrative capacity (*Mobley* v. *Greene,* 169 *Ga.* 82, 149 S. E. 703) ; *Cochran* v. *Bennett,* 37 *Ga. App.* 202, 139 S. E. 428) can not be controlled by the courts. A court of equity should not interfere with the conduct of the superintendent in a matter of this kind "unless such action is arbitrary, and amounts to an abuse of discretion." *Dyer* v. *Martin,* 132 *Ga.* 445 (3) (64 S. E. 475) ; *Dunn* v. *Beck,* 144 *Ga.* 148 (86 S. E. 385) ; *Jackson* v. *State Highway Department,* 164 *Ga.* 434 (4) (138 S. E. 847) ; *Talmadge* v. *Sutton,* 175 *Ga.* 811 (166 S. E. 240). A case might arise in which it would appear as a matter of law that no loan whatever should be obtained, or that a particular loan would be unwise in view of the terms thereof, and in such a case the superintendent would be subject to restraint by judicial action; but under the facts of this record it is apparent that the superintendent was acting within the sphere of his legally delegated powers. The judge properly denied an injunction.

*Judgment affirmed. All the Justices concur, except Hill, J., absent for providential cause.*