ATTORNEY GENERAL *v.* UNION GUARDIAN TRUST CO.

1. BANKS AND BANKING — TRUST COMPANIES — JURISDICTION OF EQUITY OVER LIQUIDATING TRUSTEES—BORROWING MONEY.

   A court of equity has jurisdiction to authorize liquidating trustees, appointed incident to the reorganization of a trust company and under the supervision and direction of the court, to borrow money to refinance outstanding loans secured by trust company assets and to make partial dividend payments on specific and general claims where proposed loan would effect a saving of interest and operating expenses (Act No. 8, Pub. Acts 1932 [1st Ex. Sess.]; Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

2. APPEAL AND ERROR—DISCRETION OF TRIAL COURT.

   The action of the trial court as to matters within its judicial discretion will not be disturbed unless there is a clear abuse thereof.

3. BANKS AND BANKING—REORGANIZED TRUST COMPANY—BORROWING MONEY—LIQUIDATING TRUSTEES—DISCRETION OF COURT.

   Order of court permitting liquidating trustees of reorganized trust company to borrow not to exceed $12,937,955.30 to pay off secured claims of $5,150,000, make partial dividend payments on specific and general claims, and to provide a fund for possible allowance of further general claims, which proposed loan of not less than three years would effect a saving of $9,000 a month in interest and effect consolidation of two sets of liquidating agencies *held*, not an abuse of discretion, notwithstanding so-called tracer claims have not been established, where under proposed plan no further dividends are contemplated until stock assessment of approximately $2,200,000 has been received by the liquidating trustees and such funds will be ample to pay tracer claims estimated to be approximately $1,700,000, over objection of holder of general claim of .$9,-165.09 (Act No. 8, Pub. Acts 1932 [1st Ex. Sess.]; Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933).

4. APPEAL AND ERROR—TRUST COMPANY REORGANIZATION—EVALUA-
   TION OF CLAIMS.

   On objector's appeal from order permitting liquidating trustees
   of a trust company to borrow money to refinance outstanding
   secured loans and make partial dividend payment of specific
   and general claims, objector's contention that he is entitled to
   an evaluation of his claim and to allocation of assets to meet it
   as provided by statute *held,* too late where reorganization plan
   has been in operation four years, as such a request must be
   raised in the reorganization proceedings (Act No. 32, Pub.
   Acts 1933, as amended).

5. SAME—TRUST COMPANY REORGANIZATION—OBJECTOR'S CHANGE OF
   POSITION—GOVERNOR'S APPROVAL OF LOAN.

   Objector to proposed loan to liquidating trustees of reorganized
   trust company who failed to call trial court's attention to pro-
   vision of statute relative to governor's approval of loans to
   reorganized trust company may not change his position as to
   proposed plan which had been otherwise satisfactory with cer-
   tain modifications (Act No. 32, § 10, Pub. Acts 1933).

Appeal from Wayne; Marschner (Adolph F.), J.
Submitted June 10, 1938. (Docket No. 76, Calendar
No. 40,131.) Decided June 30, 1938.

Petition by Patrick H. O'Brien, as Attorney Gen-
eral of the State of Michigan, and as Attorney Gen-
eral, on the relation of Rudolph E. Reichert, State
Banking Commissioner, and Murray D. Van Wag-
oner, State Highway Commissioner, against Union
Guardian Trust Company relative to the reorgani-
zation of defendant. On petition by George H.
Kirchner and others, as general trustees, and Harvey
C. Emery, as liquidating trustee, to borrow certain
funds to assist in liquidation. Joseph Hirschfeld
objected thereto. Order granted. Objector appeals.
Affirmed.

*Shaeffer & Dahling,* for petitioners.
*George A. Cram,* for objector.

SHARPE, J. Prior to the so-called "bank holiday" of February 14, 1933, the Union Guardian Trust Company had borrowed from the Reconstruction Finance Corporation certain moneys and on the above date was indebted to it in the sum of approximately $12,000,000 now bearing interest at three per cent. per annum with pledged assets of $31,000,000 as security for the loan.

Subsequent to the above bank holiday, the Union Guardian Trust Company was reorganized under the provisions of Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933 (Comp. Laws Supp. 1935, §§ 12077–1–12077–19, Stat. Ann. § 23.91 *et seq.*), and Act No. 8, Pub. Acts 1932 (1st Ex. Sess.) (Comp. Laws Supp. 1935, §§ 11962–1–11962–3, Stat. Ann. § 23.69 *et seq.*).

The plan of reorganization was approved and affirmed by the circuit court of Wayne county under date of April 16, 1934. Joseph Hirschfeld, the respondent in the present proceedings, took an appeal from the supplemental decree entered October 20, 1934. In *Attorney General* v. *Union Guardian Trust Co.*, 273 Mich. 554, we affirmed the decree and held that the above acts were constitutional; and that the plan of reorganization afforded equal protection to all creditors including the objecting appellant Hirschfeld who made no request for special personal relief. Hirschfeld filed and was allowed a general claim under the plan of reorganization in the amount of $9,165.09.

The "plan" provided that $800,000 of assets be retained by the Union Guardian Trust Company to constitute its capital. The stock of the reorganized company was to be held by five general trustees selected by the depositors' committee and approved by the banking commissioner. Under the plan, the

reorganized trust company was limited to a fiduciary business. The plan also provided for the formation of a Delaware corporation known as Collateral Liquidation, Incorporated. Its purpose was to liquidate the assets pledged to the Reconstruction Finance Corporation. All of the other corporate assets of the trust company were assigned and transferred to liquidating trustees to be liquidated for the payment of claims.

Under the plan of reorganization the secured claim of the Reconstruction Finance Corporation in the amount of approximately $12,000,000 and 2,234 general claims in the amount of $24,110,920.46 were filed and allowed. The sum of $24,110,920.46 includes certain veterans' claims in the amount of about $490,000 and claims for "specific funds" filed, the total of which amount to approximately $1,700,000. These claims were allowed as general claims and proceedings are now pending for the allowance of these claims as preferred specific claims. Since the inauguration of the above plan the trust company up to December 31, 1937, earned $377,000; and has declared dividends of $50,000 which were paid to the liquidating trustees while the balance of the earnings was retained as reserves and undivided profits. The liquidating trustees, through liquidation of assets under their control, have approximately $2,600,000 available in cash and government securities.

Up to March 10, 1938, the Collateral Liquidation, Incorporated, reduced the $12,000,000 loan held by the Reconstruction Finance Corporation to approximately $5,164,000. The general trustees and the liquidating trustees filed the petition in this cause in which they seek permission to borrow by the liquidating trustees a sum of money not to exceed $12,937,955.30 and to be used for the following purposes:

1. To pay the Reconstruction Finance Corporation the sum of approximately $5,150,000 which represents the balance due on the secured loan;

2. To provide for a firm commitment of $1,000,000 to pay a ratable dividend of 17½ per cent. to 25 per cent. on claims for specific funds, and to pay the amount of these claims as finally determined;

3. To pay a dividend of 17½ per cent. on the amount of secured and other general claims allowed by the liquidating trustees. This would require $4,000,300;

4. To pay a further dividend up to 7½ per cent. on the amount of the secured and other general claims if the amount of proposed settlement of the stockholders' liability, totaling $2,200,000 is paid or payment assured. This would require $1,700,000;

5. To provide for a firm commitment of $75,000 to cover certain pending proceedings which may result in the allowance of further general claims under the plan of reorganization.

Interest on the proposed loan would be paid as follows:

"One and one-half per cent. per annum from the date of advance to date of payment on all moneys paid thereon during the first six months after the advance, one and three-fourths per cent. per annum from date of advance to date of payment on all moneys paid thereon during the second six months after the advance, two per cent. per annum from date of advance to date of payment on all moneys paid thereon during the third six months after the advance, two and one-fourth per cent. per annum from date of advance to date of payment on all moneys paid thereon during the fourth six months after the advance, and two and one-half per cent. per annum from date of advance to date of payment on all amounts outstanding in excess of two years.

"If the rediscount rate of Federal Reserve Bank of Chicago exceeds the rate of two and one-half per

cent. per annum at any time after December 31, 1939, the bank shall have the right to increase its rate of interest on the balances then outstanding on said notes for the period after December 31, 1939, or such later date or dates that such rediscount rates shall take effect to the then current Federal Reserve Bank of Chicago rediscount rate, said interest in no event, however, to exceed five per cent. per annum.''

The proposed loan would be for a period of not less than three years. All of the assets held by Collateral Liquidation, Incorporated, and all of the assets held by the liquidating trustee including the proceeds of the stockholders' assessment, are to be pledged as security for the repayment of the loan. The proceeds of the sale and dividends from the capital stock of the trust company, but not the actual stock, would also be pledged.

It is claimed by the proponents of the loan that a saving of $9,000 per month on interest alone would be effected; that it would permit a consolidation of the two liquidating agencies and thus result in a saving in operating expense and bring about a more efficient liquidation; that the loan can either be repaid in full in three years or paid down to such an extent that it could be refinanced; that the assets to be pledged will be liquidated by the liquidating trustees in their official capacity as liquidating trustees; and that after the loan is made and certain indebtedness paid, the loan would not exceed $6,500,000. When the cause came on for trial no evidence was offered by the defendant and the trial judge entered an order as of April 1, 1938, authorizing the petitioners to effectuate a loan from the Manufacturers National Bank of Detroit in the sum of $12,937,955.30 for the purposes hereinbefore mentioned. The order also provided that the court was to retain jurisdiction in the cause for the purpose of advising and

directing the liquidating trustees under the plan of reorganization and to take such action and make such orders as it may deem necessary or advisable in that direction.

The respondent appeals and contends that the new loan plan is not necessary and is unwise in view of the fact that the loan would be of short duration and of drastic terms; that a loan should not be made to pay dividends until the final disposition of the so-called "tracer or specific claims;" that the court was not justified in entering the order without first evaluating the claim of defendant; and that the court was without jurisdiction as the order was not approved by the governor of the State of Michigan as required by Act No. 32, § 10, Pub. Acts 1933 (Comp. Laws Supp. 1935, § 12077–10, Stat. Ann. § 23.102).

The first question that presents itself to us is the power of the chancery court to authorize the liquidating agent to borrow money for the purposes herein stated. It is to be noted that under the proposed plan, all of the assets of the trust company are in the control of the liquidating trustees and under the supervision and direction of the court.

The power of the court to authorize the liquidating agent of a bank to borrow money was before the court in the case of *Andrew* v. *First Trust & Savings Bank of Sioux City,* 214 Iowa, 1337 (244 N. W. 394). Application had been made by the receiver to borrow money and the court, on petition for rehearing on an order granting this right, was asked for an opinion as to the legal right of the receiver to borrow, and the powers of the court to grant such a right or privilege. The court said:

"We think the court had jurisdiction to entertain and consider the application, and we hold, first, that the superintendent of banking, as receiver, had the right to make the application; and, second, that the court had the power to pass upon and grant or deny the same."

In *Blades* v. *Hood,* 203 N. C. 56 (164 S. E. 828), the court was required to pass on the power of the court to authorize the liquidating agent of a bank and trust company to borrow money from the Reconstruction Finance Corporation for the purpose of paying a dividend to claimants. The lower court denied the authority. The supreme court, after holding that the statutory liquidator was amenable to the instructions of the court, reversed the lower court and said:

"The right to borrow money and to pledge the assets is not absolute; it must be determined by a court of equity in its administration of justice among those who have a pecuniary interest in the affairs of the bank. The court may inquire into all the facts, including those relating to the condition of the bank and the terms imposed by the corporation for the proposed loan, retaining the control and supervision of the commissioner with respect to all matters involved in the loan as in like manner with any other chancery receiver. The whole matter may be inquired of in the pending action and upon such amendments to the pleadings, if any, as may be necessary or expedient. The judgment of the superior court is reversed and the cause is remanded."

See, also, *Baird* v. *Forbes State Bank,* 64 N. D. 239 (251 N. W. 846, 91 A. L. R. 1113); *Touchstone* v. *Gormley,* 178 Ga. 130 (172 S. E. 335); *Rand* v. *Merri*

*mack River Savings Bank,* 86 N. H. 351 (168 Atl. 897) ; *In re Cashmere State Bank,* 169 Wash. 258 (13 Pac. [2d] 892).

The next question relates to the advisability of the order entered by the trial court in permitting the liquidating trustees to borrow the amount of $12,937,955.30 under the terms and conditions hereinbefore stated. We have in mind that, ''The rule is universal that the action of the trial court, as to matters within its judicial discretion will not be disturbed unless there is a clear abuse thereof.'' 3 Am. Jur. p. 522, § 959.

The opponents of the loan contend that the proposed loan is too short and its terms too drastic ; that the proposed plan is subject to complete disorganization until the so-called ''tracer claims'' have been established. In our examination of the record we find that it is well established that the proposed plan will save the sum of $9,000 per month in interest charges alone and in addition there will be other savings in the consolidation of the two liquidation agencies into one ; nor was it necessary to establish the tracer claims before a dividend could be paid. Under the plan enough money will be borrowed to pay a dividend of 17½ per cent. It is contemplated that no further dividends will be paid until the stock assessment of approximately $2,200,000 has been received by the liquidating agent. Under the facts as established by the record this sum of money to be collected is ample to pay the so-called ''tracer claims'' which are estimated to be approximately $1,700,000. We find no abuse of discretion upon the part of the trial court in directing the payment of the dividend.

It is next contended that if the plan is to be approved, Hirschfeld is entitled to an evaluation of his

claim and to allocation of assets to meet the same as provided by Act No. 32, Pub. Acts 1933 as amended. When this cause was before us upon another occasion (*Attorney General* v. *Union Guardian Trust Co., supra*) we held that in view of the fact that Hirschfeld did not request the court to determine the value of his claim or provide for its payment by the allocation of certain specific assets; that the plan had been in operation over a year; and that under the plan then in operation all of the assets were pledged to pay all of the claims it would be inequitable to permit a single objector to create such confusion and loss to other creditors as would be caused by the granting of Hirschfeld's prayer. At this writing the plan has been in operation four years and the request of appellant now comes too late. Such a request must be raised in the reorganization proceedings. *Lansing Drop Forge Co.* v. *American State Savings Bank,* 273 Mich. 124 (104 A. L. R. 1199).

Appellant further contends that the order of April 1, 1938, is fatally defective because of the absence of the approval of the governor as required by Act No. 32, § 10, Pub. Acts 1933. The record fails to show the approval of the governor nor do the objections filed by the appellant in the circuit court call the court's attention to this provision of the statute. The objection now raised was not presented or passed upon by the lower court, but decision upon this objection is based upon the fact that in the lower court appellant proceeded upon the theory that the proposed plan was satisfactory with certain modifications. In objections to the petition filed herein, appellant requested that his *pro rata* share of the assets of the company be set aside or allocated to the

payment of his claim. Appellant may not now change his position.

The decree of the trial court is affirmed, with costs, to appellee.

WIEST, C. J., and BUTZEL, POTTER, CHANDLER, NORTH and MCALLISTER, JJ., concurred. BUSHNELL, J., did not sit.